UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                           :
MARISOL MEDINA,                                            :
*individually and on behalf of all others*                :
*similarly situated*,                                      :
                                                           :          21-CV-1321 (VSB)
                                      Plaintiff,           :
                                                           :          **OPINION & ORDER**
                     - against -                           :
                                                           :
                                                           :
                                                           :
NYC HARLEM FOODS INC., et al.,                             :
                                                           :
                                      Defendants.  :
                                                           :
-----------------------------------------------------------X

Appearances:

James Bouklas
Bouklas Gaylord LLP
Jericho, New York
*Counsel for Plaintiff*

Elizabeth Rolande Gorman
John Joseph Byrnes, III
Milber, Makris, Plousadis & Seiden, LLP
Woodbury, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Marisol Medina ("Plaintiff") brings this putative class action pursuant to the Fair

Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"), the New York State Labor Law

("NYLL"), the New York Code of Rules and Regulations ("NYCRR"), and the New York Wage

Theft Prevention Act, against Defendants NYC Harlem Foods Inc, Bronx 163 Foods Inc., Bronx

Market Foods Inc., NYC 143 Foods Inc., NYC 96 Foods Inc., NYC 89 Foods Inc., NYC Park

Foods Inc., NYC 125 Foods Inc., NYC 159 Foods Inc., NYC 155 Foods Inc., Sunnyside Bk Qsr

Inc., NYC 116 Bk Qsr Inc., NYC 116 Foods Inc., NYC 121 Foods Inc., NYC 114 Foods Inc.,

Bronx Prospect Foods Inc., NYC 145 Foods Inc., NYC Lenox Foods Inc., NYC 178 Foods Inc.,

Bronx 138 Foods Inc., Rv Eastchester Foods Inc., NYC 148 Foods Inc., NYC Lexington Foods

Inc., NYC 161 Foods Inc., Bronx 170 Foods Inc., Andhra Foods Inc., Somya Foods, Inc., Rvn

Foods Inc., and Srinivasa Rao Tummalapenta (collectively, "Defendants").  Before me is

Plaintiff's motion seeking an order (1) granting preliminary approval of the proposed settlement;

(2) conditionally certifying the settlement class and appointing Plaintiff as the class

representative of the settlement class; (3) appointing Plaintiff's counsel as class counsel; and (4)

approving Plaintiff's notice of settlement.  Because I find that the proposed settlement is

unreasonable, Plaintiff's motion is DENIED.

## I.      Factual Background and Procedural History

### 1.  The Complaint's Allegations

Plaintiff is a New York resident and "manual worker" for Defendants, which "jointly

own and operate fast food establishments throughout New York State."  (*See* Doc. 1 ("Compl.")

¶¶ 2, 32, 62, 76.)  The proposed class notice indicates that these "fast food establishments" are,

specifically, Dunkin Donuts franchises, (*see* Doc. 86-3), although that information is absent from

the Complaint or briefing.  Plaintiff alleges that Defendants have denied her overtime pay in

violation of the FLSA and NYLL, (*see* Compl. ¶¶ 96–103), and have failed to pay her on time,

(*see id.* ¶¶ 104–10), failed to provide her with accurate wage statements and a hiring notice, (*see*

*id.* ¶¶ 111–18), wrongfully deducted "costs incurred for health code violations and costs

associated with broken or old equipment" from her wages, (*see id.* ¶¶ 119–24), failed to pay her

for sick days, (*see id.* ¶¶ 125–27), and failed to pay her uniform pay, (*see id.* ¶¶ 128–43), all in

violation of the NYLL.  Plaintiff brings her action under Rule 23 of the Federal Rules of Civil

Procedure on behalf of "similarly situated employees who worked for Defendants in New York as non-exempt hourly workers."  (*Id.* ¶ 45; *see also id.* ¶¶ 44–60.)

## 2.  Litigation and Settlement Process

Plaintiff initiated this action on February 15, 2021.  (Doc. 1.)[1]  On March 29, 2021, I referred this case to mediation.  (Doc. 64.)  On July 18, 2021, the parties advised me that they had "participated in a mediation session on July 9, 2021" and were "hopeful with respect to the progress made," and as a result, asked me to stay the action pending the next mediation session. (Doc. 72.)  I granted the request.  (Doc. 73.)  The parties engaged in several mediation sessions before reaching a settlement agreement.  (*See* Docs. 75, 77.)  Pursuant to my Order of January 13, 2022, (Doc. 80), Plaintiff filed a motion for preliminary approval of their class action settlement agreement, (Doc. 83), along with a memorandum of law in support, (Doc. 85 ("Pl.'s Mem.")), a declaration in support, (Doc. 86), the proposed settlement agreement, (Doc. 86-1 ("Settlement Agreement")), the proposed claim form, (Doc. 86-2), the proposed class notice, (Doc. 86-3 ("Proposed Notice")), and the proposed preliminary approval order, (Doc. 86-4).[2] The parties jointly moved for preliminary approval of the settlement.  (*See* Pl.'s Mem. 1.) Plaintiff also moved for certification of the class, appointment of Plaintiff as class representative, and appointment of Bouklas Gaylord LLP as class counsel, which Defendants did not oppose. (*See id.*)  The parties separately filed a letter advising me that they disagreed as to the length of "the time frame for Class Members to submit claim forms, to object, or to opt-out of the settlement," but would "abide by whatever time frame is set by the Court."  (Doc. 84.)

---

[1] Although the Complaint was filed on February 15, 2021, it is dated February 12, 2020.  (Doc. 1, at 20.)

[2] The supporting materials were originally filed on March 14, 2022 as exhibits to Doc. 83, but were refiled on April 20, 2022 at Docs. 85 and 86.

### 3.  The Proposed Settlement Agreement

Plaintiff requests that I provisionally certify a Rule 23 settlement class consisting of "[e]ach and every person who is or was employed by Defendants as a non-exempt employee" between February 15, 2015 and the date of preliminary approval of the Settlement Agreement. (Settlement Agreement §§ 1.6, 1.29; *see also* Pl.'s Mem. 7–11.)  There are an estimated 1,100 members of the potential settlement class.  (*See* Pl.'s Mem. 7.)  Defendants have agreed to create a settlement fund of $1.3 million (the "Gross Settlement Fund") to pay the class, the settlement claims administrator, Plaintiff's counsel, a service award for Plaintiff, and "all such other fees and costs," subject to the Settlement Agreement's termination provision, discussed *infra* Section III(A)(3).  (*See* Settlement Agreement §§ 1.17, 2.12.)  The Settlement Agreement contemplates that all class members would release all "claims that have been asserted in the Class Action Complaint against Defendants and/or Defendants' present and former owners, officers, directors, agents, attorneys and employees, stemming from Class Members' employment with Defendants, including all FLSA Claims and NYLL Claims."  ("Released Class Claims").  (*Id.* §§ 1.28, 2.8(C).)[3]

## II.    Legal Standard

Under the FLSA, employees may pursue collective actions to recover unpaid wages where the employees are "similarly situated" and give consent to become a party in a writing filed with the court.  29 U.S.C. § 216(b).  A district court may "implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)

---

[3] Claimants would be subject to an even broader release than class members who do not file claims.  The Settlement Agreement contemplates that all claimants would release all claims that "could have been asserted in the Class Action Complaint," in addition to those claims actually asserted.  (*Id.* §§ 1.27, 4.1(C).)

(internal quotation marks omitted).

Parties may not privately settle FLSA claims absent the approval of the district court or

the Department of Labor.  *See Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 807 (2d Cir. 2022);

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).  In the absence of

Department of Labor approval, the parties must satisfy this Court that their settlement is "fair and

reasonable."  *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015).  To

determine whether a settlement is fair and reasonable under the FLSA, I must

> consider the totality of circumstances, including but not limited to the following
> factors:  (1) the plaintiff's range of possible recovery; (2) the extent to which the
> settlement will enable the parties to avoid anticipated burdens and expenses in
> establishing their respective claims and defenses; (3) the seriousness of the
> litigation risks faced by the parties; (4) whether the settlement agreement is the
> product of arm's-length bargaining between experienced counsel; and (5) the
> possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks

omitted).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts

will also evaluate the reasonableness of the fees and costs."  *Fisher v. SD Prot. Inc.*, 948 F.3d

593, 600 (2d Cir. 2020).  In requesting attorneys' fees and costs, "[t]he fee applicant must submit

adequate documentation supporting the request[]."  *Id.*  The Second Circuit has described a

presumptively "reasonable fee" as one "that is sufficient to induce a capable attorney to

undertake the representation of a meritorious civil rights case."  *Restivo v. Hessemann*, 846 F.3d

547, 589 (2d Cir. 2017) (citation omitted).  A "fee may not be reduced merely because the fee

would be 'disproportionate to the financial interest at stake in the litigation.'"  *Fisher*, 948 F.3d

at 602 (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)).  An award of

costs "normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and

which are normally charged fee-paying clients."  *Reichman v. Bonsignore, Brignati & Mazzotta*

*P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (citation omitted).

"When a district court concludes that a proposed settlement in a FLSA case is

unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead

reject the agreement or provide the parties an opportunity to revise it." *Fisher*, 948 F.3d at 597.

### III.   Discussion

#### A.   *Preliminary Approval of the Settlement Agreement*

Although the settlement here appears to be the result of arm's length negotiations through

the Southern District of New York's Mediation program, (*see* Docs. 64, 72, 75, 77), I find that

the Settlement Agreement has several fatal deficiencies that render the agreement unreasonable.

#### 1.   The Settlement Procedures Do Not Comply with the FLSA

As a threshold matter, Plaintiff misconstrues the settlement procedures.  Plaintiff

erroneously assumes that Rule 23 governs this entire matter.  (*See, e.g.*, Pl.'s Mem. 5.)  As such,

Plaintiff requests that I enter an order granting preliminary approval to the Settlement

Agreement, Plaintiff's choice of class counsel, and notice plan; allow Plaintiff to disseminate

notice of the settlement to class members; give class members a certain amount of time to file a

claim, opt out, or object to the Settlement agreement; and schedule a final fairness hearing at

which class members will be given an opportunity to be heard.  (*See id.* 5–6; *see also, e.g.*,

Settlement Agreement §§ 2.2 (providing that the parties "agree to class certification of the Class

pursuant to Rule 23 of the FRCP" for settlement purposes), 2.5 (providing that the settlement

claims administrator will notify class members "of the opportunity to object, opt-out, file a Claim

Form to join in the settlement, and/or to appear at the Fairness Hearing").)

However, Plaintiff brings this action pursuant to both the FLSA and NYLL.  (*See* Compl.

¶¶ 35, 36, 96–99; *see also* Settlement Agreement §§ 1.27, 1.28 (proposing releases of FLSA

claims).)  While Rule 23 allows class members to opt out of a class-wide settlement, § 216(b) of

the FLSA requires that employees opt into any FLSA collective action.  Specifically, each

employee must "give[] his consent in writing to become . . . a party" to the collective action, and

the consent must be "filed in the court in which such action is brought."  29 U.S.C. § 216(b).

That means unlike in Rule 23 class actions, "in an FLSA collective action, only potential

plaintiffs who opt in can be bound by the judgment or benefit from it."  *Gjurovich v.*

*Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103–04 (S.D.N.Y. 2003) (internal quotation

marks omitted); 7B Mary Kay Kane, Federal Practice & Procedure ("Wright & Miller") § 1807

(3d ed.) ("Probably the most significant difference in procedure between the FLSA and Rule 23

is that the statute contains a requirement that plaintiffs desiring to be included in the litigation

must 'opt in' to the suit by filing a written consent with the court. . . .  [O]nly those plaintiffs

who have opted in are bound by the results of the litigation."  (footnotes omitted)).  As such,

"[t]he opt-out requirement of the modern Rule 23(b)(3) directly conflicts with the express opt-in

requirement of § 216(b)."  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d Cir.

2020), *cert. dismissed*, 142 S. Ct. 639 (2021).  However, "[b]ecause FLSA and NYLL claims

usually revolve around the same set of facts, plaintiffs frequently bring both types of claims

together in a single action."  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244

(2d Cir. 2011).  When doing so, Plaintiffs may "pursue the FLSA claims as a collective action"

under 29 U.S.C. § 216(b) and "pursue the NYLL claims as a class action" under Rule 23 in the

same suit, *id.*, sometimes called a "hybrid" action, *see, e.g.*, *Febus v. Guardian First Funding*

*Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[A]mong FLSA cases, the most complex

type is the 'hybrid' action brought here, where state wage and hour violations are brought as an

'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective

action pursuant to 29 U.S.C. § 216(b)." (citation omitted)).

Plaintiff does not propose separate FLSA and NYLL classes, as is common in these hybrid suits. *See, e.g.*, *Solis v. OrthoNet LLC*, 19-CV-4678 (VSB), 2021 WL 1904984, at *4–*5 (S.D.N.Y. May 11, 2021). Nor does Plaintiff ask me to "facilitat[e] notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers*, 624 F.3d at 554 (internal quotation marks omitted). Plaintiff's notice does not accurately inform employees of their rights to opt into the litigation. (*See* Proposed Notice.) Rather, the Settlement Agreement and proposed notice explicitly provide that class members who do not opt out will be bound by the settlement. (*See* Settlement Agreement § 2.8(c); Proposed Notice ("If you do nothing, you will remain a part of the class and you will give up any rights to separately sue Defendants only for the wage and hour claims asserted in the Lawsuit.").) Indeed, the Settlement Agreement and accompanying memorandum do not address the requirements of the FLSA at all.

In her memorandum, Plaintiff suggests that this action is primarily or exclusively brought pursuant to the NYLL and NYCRR. (*See* Pl.'s Mem. 1–2.) Perhaps the parties wish to evade the FLSA's requirements, or perhaps this was an oversight. Regardless, the FLSA is the basis of my subject-matter jurisdiction, and I may decline to exercise supplemental jurisdiction over Plaintiff's state law claims in absence of a FLSA claim over which I have original jurisdiction. *See* 28 U.S.C. § 1367(c); *see also Knight v. MTA-N.Y.C. Transit Auth.*, 19-CV-9960 (VSB), 2021 WL 2435577, at *5 (S.D.N.Y. June 15, 2021), *aff'd*, No. 21-1700-cv, 2022 WL 839277 (2d Cir. Mar. 22, 2022).

Accordingly, I will not approve a settlement agreement in this matter that does not comply with the FLSA. *See Villar v. AHRC Home Care Servs., Inc.*, 18-CV-9174 (OTW), 2020

WL 4904031, at *3 (S.D.N.Y. Aug. 20, 2020) ("Courts in this District have declined to approve

a preliminary settlement agreement of a FLSA collective and Rule 23 class if the agreement does

not comply with the FLSA." (collecting cases)); *Marichal v. Attending Home Care Servs., LLC*,

432 F. Supp. 3d 271, 275 (E.D.N.Y. 2020) (denying the parties' motion for settlement approval

of FLSA collective action claims under *Cheeks* "[b]ecause the parties misapprehend how a

collective action under FLSA operates—mistaking it for a class action"); *see also Douglas v.*

*Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 87 (E.D.N.Y. 2019) (denying preliminary

settlement approval because the agreement would "release[] a claimant's FLSA claims without

consent").  This means, among other things, that the Settlement Agreement must provide

potential FLSA collective members an opportunity to opt into the litigation, rather than binding

them to the Settlement Agreement if they fail to opt out.

### 2. The Parties Have Not Provided Adequate Information for a *Cheeks* Review

As I advised the parties in my Order of January 13, 2022, under Second Circuit law, I am

obliged to evaluate whether their settlement is "fair and reasonable."  (Doc. 80 (first citing

*Cheeks*, 796 F.3d at 200; then citing *Velasquez*, 2015 WL 5915843, at *1).  "Where the class

action is labeled as a NYLL class, yet operates as a FLSA class action . . . it is appropriate to

analyze the fairness of the settlement under *Cheeks* at the preliminary approval stage." *Douglas*,

371 F. Supp. 3d at 83; *see also Marichal*, 432 F. Supp. 3d at 280 ("FLSA demands that at both

the preliminary and final approval stages, district courts are required to examine the terms of the

settlement for its fairness.").  On January 13, 2022, I advised the parties that I would

> consider the totality of circumstances, including but not limited to the following [5]
> factors:  (1) the plaintiff's range of possible recovery; (2) the extent to which 'the
> settlement will enable the parties to avoid anticipated burdens and expenses in
> establishing their respective claims and defenses; (3) the seriousness of the
> litigation risks faced by the parties; (4) whether 'the settlement agreement is the

9

product of arm's length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion.

(Doc. 80 (quoting *Beckert v. Rubinov*, No. 15 Civ.1951(PAE), 2015 WL 6503832, at *1 (S.D.N.Y. Oct. 27, 2015) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012))).  Despite my Order, the parties have not provided adequate information to allow me to ascertain the fairness of the Settlement Agreement.

First, the parties have provided almost no information about the class's "range of possible recovery." *Wolinsky*, 900 F. Supp. 2d at 335.  The parties suggest, but do not clearly state, that the proposed settlement class could expect to recover more than $1.3 million if Plaintiff were to win at trial.  Specifically, the parties assert, without more:  "The Gross Settlement Amount equates to each dollar in unpaid wages, and Spread of Hours pay as well as a portion of the unpaid notice, timely pay, and uniform maintenance violations."  (Pl.'s Mem. 18.)  The parties give no damages breakdown and no indication of what "portion of the unpaid notice, timely pay, and uniform maintenance violations" is purportedly covered by the Gross Settlement Amount. This is plainly insufficient.  Courts in this Circuit routinely demand far more detail, including, at a minimum, each party's "estimate of the number of hours worked" and "the applicable wage," along with "declarations, affidavits or exhibits substantiating [each party's] arguments."  *See Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176–77 (S.D.N.Y. 2015); *see, e.g.*, *Fernandez v. 219 Dominican Valle Corp.*, 19 Civ. 9513 (JPC), 2021 WL 240721, at *3 (S.D.N.Y. Jan. 25, 2021) (denying preliminary settlement approval in part because "the parties have neither explained how they arrived at the estimated total recoverable figures nor submitted any declarations, affidavits or exhibits substantiating their arguments." (internal quotation marks omitted)); *Sanchez Gonzalez v. Tribeca Hummus Inc.*, 18 Civ. 10664 (ER), 2020 WL 409750, at *1 (S.D.N.Y. Jan. 24, 2020) (denying preliminary settlement approval because "the parties did

10

not provide the basis for the recovery figure"); *Lodescar v. Denihan Hosp. Grp.*, 14-CV-8218

(ALC), 2017 WL 11568373, at *1 (S.D.N.Y. Feb. 16, 2017) (denying preliminary settlement

approval in part because "[t]he settlement amount is unsubstantiated").

      The parties also provide only conclusory statements about their "anticipated burdens and

expenses in establishing their respective claims and defenses" and "the seriousness of the

litigation risks faced by the parties." *Wolinsky*, 900 F. Supp. 2d at 335.  Many of the parties'

assertions about litigation risks would be true of any class action, or any civil lawsuit for that

matter.  (*See, e.g.*, Pl.'s Mem. 14–15 ("Plaintiff would have to demand documents and make

interrogatory requests formally in discovery after an Initial Conference, would have to proceed to

depositions, and then file a motion to preliminarily certify the collective action.").)  Plaintiff has

sued 29 different Defendants, alleging "[u]pon information and belief" that "Defendants jointly

own and operate fast food establishments throughout New York State" and "Defendants are

subject to common ownership, management, oversight, pay practices, policies, and procedures."

(Compl. ¶¶ 32, 33.)  As previously mentioned, the parties do not acknowledge anywhere in their

briefing that Defendants are Dunkin Donuts franchises, or explain whether, in absence of

settlement, Defendants would challenge Plaintiff's motion to certify the class for lack of

commonality or typicality.  (*See, e.g.*, Pl.'s Mem 17 (stating that "Defendants would oppose

Plaintiffs' application for Rule 23 class certification" but giving no basis).)  Indeed, the parties

do not explain what defenses Defendants would assert.  (*See* Pl.'s Mem. 2 ("Defendants assert

that they fully complied with all applicable wage and hour laws."); *see also id.* at 16.)  It is even

unclear from the parties' filings what type of work Plaintiff and the putative class members did

for Defendants.  (*See* Compl. ¶ 48 ("The Class Plaintiffs are manual workers as defined in the

New York Labor Law, having spent more than 25% of their working time engaged in physical

labor."); *cf. Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397, 402 (W.D.N.Y. 2013)

(finding a proposed settlement class was not ascertainable where the parties' class definition

"merely parrot[ed] the language of" the relevant consumer protection statute).)  "The parties

have failed to provide the Court with enough information about the bona fides of the dispute for

the Court to determine whether the settlement amount is fair and reasonable."  *Mamani v. Licetti*,

No. 13–CV–7002 (KMW)(JCF), 2014 WL 2971050, at *2 (S.D.N.Y. July 2, 2014).  As such, I

am unable to determine "whether the agreement reflects a reasonable compromise of disputed

issues rather than a mere waiver of statutory rights brought about by an employer's

overreaching."  *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86 (JS)(MLO),

2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (internal quotation marks omitted).

The only *Wolinsky* factor I can fully consider is whether "the settlement agreement is the

product of arm's length bargaining between experienced counsel."  900 F. Supp. 2d at 335.  I

find that the settlement was the product of arm's length negotiations through the Southern

District of New York's Mediation program.  (*See* Docs. 64, 72, 75, 77; *see also* Pl.'s Mem. 15–

16 ("Over a period of approximately five months, the parties attended four separate mediation

sessions with [a] highly-experienced and well-regarded mediator . . . [who] further facilitated

additional negotiations outsides [sic] of these mediation sessions.").)  If the parties intend to

revise their settlement agreement, they should also submit additional briefing addressing the

remaining *Wolinsky* factors.  In the meantime, because the parties have not provided the

threshold information that I must consider to determine whether the Settlement Agreement is fair

and reasonable, I cannot grant preliminary approval.  *See Villar*, 2020 WL 4904031, at *4

(denying preliminary settlement approval in part "because the parties have failed to provide the

Court with sufficient information to conduct a fulsome *Cheeks* review").

### 3.  The Termination Provision Is Not "Fair and Reasonable"

Although the Settlement Agreement would formally create a settlement fund of $1.3 million (the "Gross Settlement Amount"), the Settlement Agreement is constructed such that Defendants would only ever be required to pay class members a small fraction of that amount. (*See* Settlement Agreement § 1.17; *see also* Pl.'s Mem. 2.)  Specifically, the Settlement Agreement has a provision (the "Termination Provision"), which says:

> Defendants may terminate this Agreement upon written notice to Class Counsel and the Settlement Claims Administrator if the value of the Net Filed Claims reaches 20% of the total value of the settlement ($260,000), provided that (i) the Parties meet and confer in good faith to negotiate terms to keep the resolution intact; and (ii) Class Counsel reserves the right to reduce their fees commensurate to preserve this Agreement.

(Settlement Agreement § 2.12(A)(2); *see also* Pl.'s Mem. 2 ("[P]ayment is subject to the limitations set forth in the Agreement, such as Defendants' right to terminate the Agreement if the value of claims actually filed exceeds twenty percent of the Settlement Amount.").) Although, as previously discussed, I cannot fully determine the class's range of possible recovery, I infer that the Settlement Agreement would only be enforceable if a small enough portion of the 1,100 class members file claims such that some amount less than 20 percent of the class's total estimated damages is actually recovered.[4]

At first glance, this provision resembles a common clause in class action settlements,

---

[4] It is difficult to reconcile the Termination Provision with the "Settlement Fund Formula," which provides that "[t]he 'Individual Settlement Amount' for each class member shall be determined by multiplying each such person's Distribution Percentage by the Net Settlement Fund"—where the "Distribution Percentage" is the number of weeks each class member worked for Defendants divided by the total number of weeks that all class members worked for Defendants, and where "Net Settlement Fund" is undefined. (Settlement Agreement § 3.5(A).)  In other words, the Settlement Fund Formula seems to assume a common-fund settlement where the entire fund is spent, while the Termination Provision seems to assume a claims-made settlement where it would be possible for "the sum of the dollar amount of the claims actually filed" to "reach[]" but not exceed "20% of the total value of the settlement," (*id.* §§ 1.19, 2.12(A)(2)).  Since I am concerned about the Termination Provision as written, I assume for purposes of my analysis that this is a claims-made settlement, but I ask the parties to clarify in any revised settlement agreement.  I also request that the parties provide case law supporting the type of settlement structure they present in any revised settlement agreement.

called a "blow-up," "blow," or "tip over" provision. "A 'blow up provision' allows the

defendant to withdraw from—or 'blow up'—a settlement if a certain number of class members

opt out of the settlement." 4 William B. Rubenstein, Newberg on Class Actions § 13:6 (5th ed.

Dec. 2021 update); *see also, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 107 F.3d 3 (2d Cir.

1996) (unpublished table decision) (explaining that the "so-called 'blow provision'" in the

settlement agreement "provided that if class members asserting in the aggregate more than $10

million in claims opted out of the class," defendants would be permitted "to withdraw from the

settlement"). It's easy to understand why a defendant would want such a provision. "[A]

defendant's goal in settling a class suit is to fix its liability to the class by precluding all future

litigation against it arising out of the circumstances of the case." Newberg on Class Actions §

13:6. Class members who opt out "can then pursue later individual litigation against the

defendant," so if too many class members opt out of the class settlement and bring their own

claims, "the defendant must pay both the class's relief and then the sum of all of these individual

judgments." *Id.* Blow-up provisions thus encourage settlement by allowing defendants to limit

their potential liability. *See* Amir Rozen & Christopher Harris, *Opt-Out Cases in Securities*

*Class Action Settlements*, Harvard Law School Forum on Corporate Governance (Oct. 28, 2016),

https://corpgov.law.harvard.edu/2016/10/28/opt-out-cases-in-securities-class-action-settlements/.

Blow-up provisions also give plaintiff's counsel leverage to negotiate the strongest possible

settlement to discourage opt outs. *See, e.g.*, *id.* ("The mere threat of an opt-out can be a powerful

negotiating tool for plaintiffs."). As a result, courts usually approve settlement agreements with

blow-up provisions. *See* Newberg on Class Actions § 13:6; *see also, e.g.*, *In re Citigroup Inc.*

*Sec. Litig.*, 965 F. Supp. 2d 369, 377 (S.D.N.Y. 2013) (noting the court had previously granted

preliminary approval to a class action settlement with a blow-up provision); *In re Prudential Sec.*

14

*Inc. Ltd. P'hips Litig.*, 164 F.R.D. 362, 365–66 (S.D.N.Y. 1996) (same), *aff'd sub nom. In re*

*Prudential Sec. Inc. Ltd. P'ship Litig.*, 107 F.3d at 3; *In re HealthSouth Corp. Sec. Litig.*, 334 F.

App'x 248, 250 (11th Cir. 2009) (same).  *But see In re Herald, Primeo, & Thema Sec. Litig.*, No.

09 Civ. 289(RMB), 2011 WL 4351492, at *12 (S.D.N.Y. Sept. 15, 2011) (noting that a

settlement agreement's blow-up provision, among other "contingencies," "may militate against a

grant of preliminary approval").

However, the differences between traditional blow-up provisions and the Termination

Provision here are material.[5]  This Settlement Agreement would empower Defendants to nullify

the settlement if too many class members file claims, not if too many class members opt out.  To

put it another way, Defendants can blow up the Settlement Agreement if the settlement is too

successful at resolving the class's claims, rather than if the settlement is not successful enough.

The parties have not even attempted to justify the structure of this settlement, and I do not see

how they could, given that the proposed Termination Provision appears to create perverse

incentives for Plaintiff's counsel at the expense of the class.  With a typical blow-up provision,

the more class members who file claims, the more that plaintiff's counsel benefits, because class

members who have filed claims have not opted out and triggered the blow-up provision.  With

this Termination Provision, the fewer class members who file claims, the more Plaintiff's

counsel benefits, because too many class members exercising their right to relief will trigger the

Termination Provision.  As such, this Settlement Agreement "gives rise to the concern that

counsel . . . ha[s] an incentive to compromise the rights of the absent class members and will

---

[5] Plaintiff's counsel negotiated a traditional blow-up provision in at least one other case in this District.  *See* Joint
Stipulation of Settlement and Release ¶ 7.1, *Brown v. Dr Smood 1151 Broadway LLC*, 18-CV-8038-KPF (S.D.N.Y.
Apr. 5, 2019), Doc. 28-3 ("Defendant shall have the absolute discretionary right to terminate this Agreement at any
time prior to the entry of the Final Approval Order in the event that twenty (20) or more Rule 23 Class Members
timely submit Opt-Out Statements.").

have insufficient incentives to ensure they are paid." *Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791, 801 (S.D.N.Y. 2020) (denying preliminary approval to a hybrid FLSA and NYLL settlement); *see also Augustyniak v. Lowe's Home Ctr., LLC*, 102 F. Supp. 3d 479, 484 (W.D.N.Y. 2015) (denying preliminary approval to a hybrid FLSA and NYLL settlement where the defendant "reserve[d] the right to opt out of the settlement if the amount to be distributed to the class were to exceed $3 million"). I cannot countenance a class action settlement that makes its effectuation contingent on most claims going unrecovered and pits the interests of counsel against the interests of the class.

Moreover, the Settlement Agreement requires the parties to "meet and confer in good faith to negotiate terms to keep the resolution intact" "if the value of the Net Filed Claims reaches 20% of the total value of the settlement ($260,000)." (Settlement Agreement § 2.12(A)(2).) These terms mean that the settlement amount is not set and is subject to the future desires and whims of the parties. I cannot approve an uncertain settlement amount that is subject to further negotiation by the parties. Such a settlement is "no settlement at all, and there is nothing for the court to approve at this time." *In re Herald, Primeo, & Thema Sec. Litig.*, 2011 WL 4351492, at *12 (citation omitted) (denying preliminary settlement approval in part because of a blow-up provision).

Finally, as previously discussed, the Settlement Agreement provides that class members who do not file claims, but do not opt out, will be bound by the settlement and waive all "claims that have been asserted in the Class Action Complaint against Defendants and/or Defendants' present and former owners, officers, directors, agents, attorneys and employees." (Settlement Agreement § 1.28; *see also id.* § 4.1(A) ("[E]ach individual Class Member who does not timely opt-out pursuant to this Agreement forever and fully releases and discharges . . . the Released

16

Class Claims.").)  "There is of course no dispute that under elementary principles of prior

adjudication a judgment in a properly entertained class action is binding on class members in any

subsequent litigation."  *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984).

While still an open question in our Circuit, there is case law suggesting that an "opt-out state law

class-action settlement can operate as a bar" to future FLSA collective action claims as well.

*Mason v. Lumber Liquidators, Inc.*, 17-CV-4780 (MKB), 2021 WL 7906503, at *3 (E.D.N.Y.

Jan. 6, 2021); *see also Gardner v. W. Beef Props., Inc.*, No. 07-CV-2345, 2008 WL 2446681, at

*3 (E.D.N.Y. June 17, 2008); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y.

2008).  One major reason that courts must approve FLSA settlement agreements is "for fear that

employers would coerce employees into settlement and waiver."  *Le*, 2008 WL 724155, at *1

(internal quotation marks omitted).  If the parties wished to structure the Settlement Agreement

to limit the number of class members who would get paid, while still requiring all class members

to waive their FLSA and NYLL claims against Defendants, the parties should have—at a

minimum—provided me some legal and factual justification for such a settlement structure.

### 4.   The Lack of Documentation About Proposed Attorneys' Fees Renders the Settlement Agreement Unreasonable

Lastly, Plaintiff's counsel intends to request an attorneys' fee award of one-third of the

Gross Settlement Fund, plus their actual litigation expenses and costs.  (Settlement Agreement §

3.3(A).)  Plaintiff's counsel also intends to request a $25,000 service award for Plaintiff.  (*Id.* §

3.4.)  Plaintiff's counsel argues that I "need not rule on the proposed attorneys' fees award or

service awards now" since "Plaintiff will file separate motions asking the Court to approve them

simultaneously with the Parties' Motion for Judgment and Final Approval of the settlement, and

will append time records and other supporting information."  (Pl.'s Mem. 5.)  Even though

Plaintiff's counsel has not yet moved for attorneys' fees, I am still obligated to "carefully

17

scrutinize the settlement and the circumstances in which it was reached, if only to ensure that the interest of plaintiffs' counsel in counsel's own compensation did not adversely affect the extent of the relief counsel procured for the clients." *Wolinsky*. 900 F. Supp. 2d at 336 (internal quotation marks omitted); *see also Velasquez*, 137 F. Supp. 3d at 585 ("[T]he Court's primary function is to make sure that some of the plaintiff's recovery has not been unreasonably diverted to pay his attorney a greater fee than that to which he is entitled" (citation omitted)).

The Settlement Agreement as written provides that class members are guaranteed no more than $260,000, *see supra*, while Plaintiff's counsel plans to petition for an award of more than $433,333.33.  (*Compare* Settlement Agreement § 2.12(A)(2) *with id.* § 3.3(A).)  Although I cannot decide the reasonableness of the fees themselves until Plaintiff's counsel submits documentation, *Fisher*, 948 F.3d at 600—as Plaintiff's counsel intends to do later, (Pl.'s Mem. 5)—the fee arrangement raises red flags about the reasonableness of the Settlement Agreement as a whole.  *See Douglas*, 371 F. Supp. 3d at 85 ("*Cheeks* and *Wolinsky* contemplate using attorney's fees as an insight into the fairness of the settlement.  A fee that is so disproportionate to a plaintiff's recovery raises questions of whether counsel has taken monies that should be awarded to the employee.").  That "Class Counsel reserves the right to reduce their fees commensurate to preserve this Agreement," (Settlement Agreement § 2.12(A)(2)(ii)), and that the Settlement Agreement "is not contingent upon approval by the Court of Class Counsel's application for attorneys' fees," (*id.* § 2.12(A)(1)), are not sufficiently definite promises to save the Settlement Agreement.  Instead, these caveats suggest that Plaintiff's counsel knows that this arrangement is patently unreasonable, such that it may need to be revised in the future.

"At this stage, the final fee award is not being determined; nonetheless there must be *some* factual support for the fee award." *Douglas*, 371 F. Supp. 3d at 85.  Plaintiff's counsel has

provided none.  Without factual support, I find that the proposed attorneys' fees render the

Settlement Agreement unreasonable.

* * *

As the Second Circuit has said, "the FLSA is a uniquely protective statute" that is

designed "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining

power between employers and employees."  *Cheeks*, 796 F.3d at 207.  This proposed Settlement

Agreement, if approved as contemplated, could handsomely award Plaintiff's counsel at the

expense of the workers whom this litigation is supposedly about.  Because I find that the

settlement procedures do not comply with the FLSA, the parties have not provided enough

information for me to conduct a full *Cheeks* review, the Termination Provision renders the

Settlement Agreement not "fair and reasonable," and Plaintiff's counsel has not provided any

documentation in support of their contemplated attorneys' fees, Plaintiff's motion for

preliminary settlement approval is DENIED without prejudice.

### B.  *Conditional Certification of the Proposed Class, Appointment of Class Counsel, and Approval of Class Notice*

Because I deny Plaintiff's motion for preliminary settlement approval, I must also deny

without prejudice Plaintiff's request for conditional certification of the proposed class,

appointment of class counsel, and approval of the proposed class notice.  *See Sandoval v.*

*Philippe N. Am. Rests., LLC*, 16-CV-0615 (VSB), 2017 WL 3841871, at *3 (S.D.N.Y. Aug. 31,

2017).  If the parties intend to file a revised agreement and motion, the motion should also

address the legal standard for certification of a FLSA collective action.

### IV.    Conclusion

For the foregoing reasons, Plaintiff's Motion, (Doc. 83), is DENIED without prejudice.

The parties may proceed by either:

19

1) Filing a revised settlement agreement within twenty-one (21) days of the date of this

   Order that cures the deficiencies in the provisions as discussed above; or

2) Filing a joint letter within twenty-one (21) days of the date of this Order that indicates

   the parties' intention to abandon settlement, at which point I will set a date for a

   status conference.

If the parties elect to file a revised settlement agreement, I direct them, again, (*see* Doc.

80), to explain why they believe the settlement is "fair and reasonable" under FLSA with

reference to the following five (5) factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335.

The Clerk's Office is respectfully directed to terminate the motion at Document 83.

SO ORDERED.

Dated: April 21, 2022
      New York, New York

          Vernon S. Broderick
          United States District Judge