**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARISOL MEDINA, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>                    v.<br><br> NYC HARLEM FOODS INC, BRONX 163 FOODS INC.,<br> BRONX MARKET FOODS INC, NYC 143 FOODS INC,<br> NYC 96 FOODS INC, NYC 89 FOODS INC,<br> NYC PARK FOODS INC, NYC 125 FOODS INC,<br> NYC 159 FOODS INC, NYC 155 FOODS INC,<br> SUNNYSIDE BK QSR INC, NYC 116 BK QSR INC,<br> NYC 116 FOODS INC, NYC 121 FOODS INC,<br> NYC 114 FOODS INC, BRONX PROSPECT FOODS INC.,<br> NYC 145 FOODS INC., NYC LENOX FOODS INC.,<br> NYC 178 FOODS INC., BRONX 138 FOODS INC.,<br> RV EASTCHESTER FOODS INC., NYC 148 FOODS INC.,<br> NYC LEXINGTON FOODS INC., NYC 161 FOODS INC.,<br> BRONX 170 FOODS INC., ANDHRA FOODS INC.,<br> SOMYA FOODS, INC., RVN FOODS INC., and<br> SRINIVASA RAO TUMMALAPENTA, individually,<br><br>                                        Defendants. | Civil Action No.:<br>21-CV-1321 |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is entered into by and between MARISOL MEDINA ("Named Plaintiff"), as well as all Class Members (as defined below) and by Defendants NYC HARLEM FOODS INC, BRONX 163 FOODS INC., BRONX MARKET FOODS INC, NYC 143 FOODS INC,  NYC 96 FOODS INC, NYC 89 FOODS INC, NYC PARK FOODS INC, NYC 125 FOODS INC, NYC 159 FOODS INC, NYC 155 FOODS INC, SUNNYSIDE BK QSR INC, NYC 116 BK QSR INC, NYC 116 FOODS INC, NYC 121 FOODS INC, NYC 114 FOODS INC, BRONX PROSPECT FOODS INC., NYC 145 FOODS INC., NYC LENOX FOODS INC., NYC 178 FOODS INC., BRONX 138 FOODS INC., RV EASTCHESTER FOODS INC., NYC 148 FOODS INC., NYC LEXINGTON FOODS INC., NYC 161 FOODS INC., BRONX 170 FOODS INC., ANDHRA FOODS INC., SOMYA FOODS, INC., RVN FOODS INC., and  SRINIVASA RAO TUMMALAPENTA (collectively, "Defendants") (each a "Party" and together the "Parties").

## RECITALS

WHEREAS, on February 15, 2021, Named Plaintiff commenced this action on behalf of

herself and the Putative Class seeking recovery of unpaid timely wages under the New York Labor Law and the Fair Labor Standards Act, including without limitation minimum wages, overtime wages, spread of hours pay, frequency of pay, as well as certain record keeping violations and notice items, and attorneys' fees, interest, and costs.

WHEREAS, the Parties, for settlement purposes only, have stipulated to certify this as a class action pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23 with respect to all non-exempt employees of Defendants at any time from February 15, 2015, through and including the date of the Preliminary Approval Order ("Relevant Period");

WHEREAS, Named Plaintiff and Defendants have engaged in numerous and protracted settlement negotiations and exchange of documents, as well as attendance at multiple mediation sessions by the highly-experienced and well-regarded mediator Patrick Mike McKenna, to arrive at the settlement described herein;

WHEREAS, Defendants deny all of the allegations made by Named Plaintiff in the Litigation (as defined below) and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability, Defendants have agreed to the dissemination of a notice of settlement pursuant to Rule 23 of the FRCP;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Claims (as defined below) between Named Plaintiff, the Class Members, and Defendants, including all claims asserted in the Litigation, in order to avoid the burden, expense, and uncertainty of continuing the Litigation;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

**1     DEFINITIONS.** The defined terms set forth in this Agreement have the meanings ascribed to them below

**1.1   "Action" or "Litigation."** Action or Litigation shall mean the above-referenced case captioned *Marisol Medina v. NYC Harlem Foods Inc. et al.,* United States District Court, Southern District of New York, Civil Case No: 21-CV-1321.

**1.2   "Agreement."** Agreement shall mean this Settlement Agreement and Release.

**1.3**    **"Bar Date."** Bar Date shall mean the date by which any Class Member who wishes to qualify as a Claimant must file a Claim Form, which date shall be no later than sixty (60) days after the initial mailing of the Notice of Proposed Settlement.

**1.4**    **"Claim Form."** Claim Form shall mean the form, a copy of which is attached to the Notice of Proposed Settlement, that Class Members must sign and return post-marked by the Bar Date. The Claim Form must be filed with the Settlement Claims Administrator for a Class Member to be eligible for a Settlement Check.

**1.5**    **"Claimant."** Claimant shall mean a Class Member or the authorized legal representative of such Class Member, who timely files a Claim Form and is entitled to receive a Settlement Check.

**1.6**    **"Class" or "Class Member(s)."** Class or Class Members shall be defined as: Each and every person who is or was employed by Defendants as a non-exempt employee during the Relevant Period.

**1.7**    **Class Counsel" or "Plaintiffs' Counsel."** Class Counsel or Plaintiffs' Counsel shall mean James Bouklas, Esq., and Mark Gaylord, Esq., Bouklas Gaylord, LLP 357 Veterans Memorial Highway, Commack, New York 11725.

**1.8**    **"Class Member List."** Class Member List shall mean a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) all known email addresses; (iv) last known telephone number; (v) shifts  and hours worked data necessary for the allocation formulas set forth in Section 3.5 of this Agreement; and (vii) social security numbers, if available, contained in a confidential document that the Defendants shall provide to Class Counsel and the Settlement Claims Administrator. The Class Member List is to be used by Class Counsel and the Settlement Administrator to effectuate settlement, and may not be used for any other purpose.

**1.9**    **"Court."** Court shall mean the United States District Court, Southern District of New York.

**1.10**    **"Days."** Days shall mean calendar days.

**1.11**    **"Defendants."** Defendants shall mean NYC Harlem Foods Inc, Bronx 163 Foods Inc., Bronx Market Foods Inc, Nyc 143 Foods Inc,  NYC 96 Foods Inc, NYC 89 Foods Inc, NYC Park Foods Inc, NYC 125 Foods Inc, NYC 159 Foods Inc, NYC 155 Foods Inc, Sunnyside Bk Qsr Inc, NYC 116 Bk Qsr Inc, NYC 116 Foods Inc, NYC 121 Foods Inc, NYC 114 Foods Inc, Bronx Prospect Foods Inc., NYC 145 Foods Inc., NYC Lenox Foods Inc., NYC

178 Foods Inc., Bronx 138 Foods Inc., Rv Eastchester Foods Inc., NYC 148 Foods Inc., NYC Lexington Foods Inc., NYC 161 Foods Inc., Bronx 170 Foods Inc., Andhra Foods Inc., Somya Foods, Inc., Rvn Foods Inc., And Srinivasa Rao Tummalapenta.

1.12 **"Defense Counsel."** Defense Counsel shall mean Elizabeth Gorman, Esq, and John Byrnes, Esq., Milber Makris Plousadis & Seiden, LLP, 1000 Woodbury Road, Suite 402, Woodbury, New York 11797.

1.13 **"Employment Taxes."** Employment Taxes shall mean all taxes and withholdings required to be paid or withheld arising out of employment compensation in the Action including the employer's share of taxes including FICA, FUTA, and SUTA .

1.14 **"Fairness Hearing."** Fairness Hearing shall mean the hearing before the Court relating to the Motion for Final Approval, unless otherwise scheduled by the Court without the filing of a motion.

1.15 **"Final Effective Date."** The Final Effective Date shall be thirty (30) days after the Court's Final Approval Order approving this Agreement; provided the time to file a Notice of Appeal from the Final Approval Order has expired with no notice of appeal having been filed, or if a Notice of Appeal is filed, the latest of the following, if applicable, has occurred: (i) any appeal from the Final Approval Order has been finally dismissed; (ii) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (iii) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired with no request for further review/appeal having been timely filed; and (iv) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form substantially identical to the form of the Final Approval Order entered by the Court. If affirmance as contemplated in this paragraph is not issued, Defense and Class Counsel shall meet and confer as to options for proceeding.

1.16 **"Final Approval Order."** Final Approval Order shall mean the Order entered by the Court after the Fairness Hearing that shall: (i) approve the settlement and Agreement as fair, reasonable, adequate, and binding; (ii) order the Settlement Claims Administrator to make all required withholdings and distribute Settlement Checks to the Claimants, including Service Awards as described in this Agreement to be paid from the QSF; (iii) order Class Counsels' attorneys' fees, costs, and expenses, Settlement Claims Administrator's fees and costs, and Service Awards to be paid from the QSF; (iv) order the dismissal with prejudice of the Action.

1.17 **"Gross Settlement Fund."** Gross Settlement Fund refers to the sum not to exceed One

Million Three Hundred Thousand dollars ($1,300,000), which represents the maximum potential amount, except employer's-side Employment Taxes, that could possibly be paid by Defendants as full consideration for this Agreement.

**1.18** **"Named Plaintiff."** Named Plaintiff shall mean Marisol Medina.

**1.19** **"Net Filed Claims Amount."** Net Filed Claims Amount shall mean the sum of the dollar amount of the claims actually filed, subject to the calculations and apportionments as outlined in Section 3.5.

**1.20** **"Net Settlement Amount."** Net Settlement Amount shall mean the maximum amounts to potentially be paid to all Claimants from the Gross Settlement Fund. This amount consists of the Gross Settlement Fund amount of One Million Three Hundred Thousand ($1,300,000) subtracted by Class Counsel's attorneys' fees, costs and expenses as defined in Section 3.3, the Settlement Claims Administrators' fees and costs, Services Awards as defined in Section 3.4, and the Reserve Amount.

**1.21** **"Notice" or "Notices."** Notice or Notices shall mean the Court–approved Notice of Proposed Settlement including notice of an opportunity to opt-out and/or object to the proposed settlement.

**1.22** **"Objector."** Objector shall mean any Class Member who properly and timely files an objection to this Agreement, but does not include any individual who opts-out of this Agreement.

**1.23** **"Parties."** Parties shall refer to Named Plaintiff, Defendants and the Class Members collectively.

**1.24** **"Preliminary Approval Order."** Preliminary Approval Order shall mean the Order entered by the Court: (i) approving the settlement; (ii) approving a Notice and the Claim form; and (iii) directing the manner and timing of publishing the Notice to the Class.

**1.25** **"Qualified Settlement Fund" or "QSF."** Qualified Settlement Fund or QSF shall mean the account established by the Settlement Claims Administrator for the (i) Net Filed Claims Amount; (ii) Settlement Claims Administrators' fees and costs; (iii) Class Counsel's attorneys' fees, costs, and expenses; (iv) Services Awards; (v) Reserve Amount; (vi) Employment Taxes; and (vii) all such other damages, costs, or expenses arising out of this Litigation paid for by Defendants. The parties that comprise the Defendants shall be jointly and severally responsible for funding the QSF. The QSF will be controlled by the Settlement

Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Net Settlement Amount.

1.26 **"Relevant Period" or "Relevant Time Period."** Relevant Period or Relevant Time Period shall mean any time between February 15, 2015 and the date the Court issues the Preliminary Approval Order.

1.27 **"Reserve Amount."** Reserve Amount shall mean $15,000 that the Settlement Administrator will set aside out of the Gross Settlement Fund (defined below) pursuant to Section 3.1(C) for errors or omissions that occurred during the settlement processes of this Agreement.

1.28 **"Settlement Checks."** Settlement Checks shall mean the checks issued to Claimants in accordance with this Agreement by the Settlement Claims Administrator.

1.29 **"Settlement Claims Administrator."** Settlement Claims Administrator shall mean a qualified administrator selected pursuant to Section 2.3 to mail the Notices and administer the calculation, allocation, and distribution of the QSF or perform all administrative duties pursuant to Section 2.4. The Settlement Claims Administrator's fees shall be borne by the QSF and shall be detailed in a fee agreement specifying the fees charged by it and the manner in which same are calculated and recorded. The parties select Martom Solutions as the Settlement Claims Administrator.

1.30 **"Settlement Mediator."** The Settlement Mediator shall mean Patrick Michael McKenna, Esq.

1.31 **"Silent Class Member."** A Silent Class Member is a Class Member who does not timely submit a Claim Form, exclude themselves, or object to the settlement.

## 2    INITIAL PROCEDURAL ISSUES

2.1 **Binding Agreement.** This Agreement is a binding agreement and contains all agreed-upon terms and supersedes all prior discussions, agreements, and understandings, whether written or verbal, concerning the matters addressed in this Agreement.

2.2 **Settlement Class.** For purposes of settlement only, the Parties agree to certification of the Class pursuant to Rule 23 of the FRCP.

**2.3**    **Retention of the Settlement Claims Administrator.** Within ten (10) days after the Court issues the Preliminary Approval Order, the Parties shall engage the Settlement Claims Administrator whose fee shall be paid from the Qualified Settlement Fund.

**2.4**    **Responsibilities of Settlement Claims Administrator.** The Settlement Claims Administrator shall be responsible for: (i) preparing, printing, and disseminating to Class Members the Notice and Claim Forms, including sending by email, as well as resending any Notice and Claim Form returned with a new forwarding mailing address; (ii) copying counsel for all Parties on material correspondence; (iii) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections, or other written or electronic communications from Class Members that the Settlement Claims Administrator receives; (iv) receiving, retaining, and reviewing Claim Forms submitted by Class Members; (v) keeping track of opt-out/exclusion requests and objections, including maintaining the original mailing envelopes in which same were mailed; (vi) preparing and mailing: (1) Class Counsel's attorneys' fees, expenses, and costs, (2) service payments, and (3) Settlement Checks in accordance with this Agreement and any order of the Court; (vii) within five days of receipt, ascertaining current address and addressee information for each Notice and Claim Form returned as undeliverable and re-mailing of Notice and Claim Form to the current address; (viii) responding to inquiries of Class Members regarding procedures for filing objections, opt-out statements, and Claim Forms; (ix) referring to Class Counsel all inquiries by Class Members regarding matters not within the Settlement Claims Administrator's duties specified herein; (x) responding to inquiries of Class Counsel and Defense Counsel consistent with the Settlement Claims Administrator's duties specified herein; (xi) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xii) maintaining adequate records of its activities, including the dates of the mailing of Notice(s) and mailing and receipt of Claim Forms(s), returned mail and other communications and attempted written or electronic communications with Class Members or Claimants; (xiii) confirming in writing, including through a report if necessary, to Class Counsel, Defense Counsel, and the Court its completion of the administration of the settlement; (xiv) timely responding to communications from the Parties, their counsel, or OAG; and (xv) providing all information, documents, and, if requested, calculations necessary to determine each Claimant's share or allocation of the Net Settlement Fund without disclosing the identities of the Claimants; (xvi) providing a weekly email during the time period between the mailing of the Notice until the Fairness Hearing that includes the total number of Claimants, opt-outs or exclusions, and objections; (xvii) throughout the period of claims administration, providing reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices and Claims Forms to Class Members, the claims administration process, distribution of the Settlement Checks, or any other aspect of the claims administration process, subject to the terms of this Agreement; (xviii) calculating and making all withholdings from the employees' settlement payments required pursuant to

the employee's share of any federal, state, or local tax law or regulation, with respect to the wage payments; (xix) calculating the employer side Employment Taxes as set forth in Section 1.18, which shall be paid by the Defendants; and (xx) such other tasks as the Parties mutually agree. In addition, no later than thirty (30) days after the Bar Date or at least fifteen (15) days prior to the Fairness Hearing, the Settlement Claims Administrator by email shall certify jointly to Class Counsel and Defense Counsel and shall notify OAG: (i) the number of Claimants who timely filed their Claim Form, (ii) a list of all Class Members who filed a timely objection, (iii) a list of all Class Members who requested to opt-out of the settlement at any time during the Opt-out Period, and (iv) the aggregate payments to all Claimants, plus Class Counsels' attorneys' fees, costs and expenses, Settlement Claims Administrator's fees and costs, Employment Taxes and Service Awards.

2.5 **Notice.** The Court-approved Notice will inform Class Members about this Agreement and will also advise them of the opportunity to object, opt-out, file a Claim Form to join in the settlement, and/or to appear at the Fairness Hearing. Within thirty (30) days of the Court issuing the Preliminary Approval Order or as otherwise ordered by the Court, the Settlement Claims Administrator will mail the Court-approved Notice and Claim Form to all Class Members, via First Class United States Mail. The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of every Class Member, including a skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The Settlement Claims Administrator shall also mail a Notice and Claim Form to any Class Member who contacts the Settlement Claims Administrator during the time period between the initial mailing of the Notice and the Bar Date and requests that their Notice and Claim Form be re-mailed. The Settlement Claims Administrator will notify Class Counsel and Defense Counsel of any Notice and Claims Form sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice and Claims Form returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement. All costs of locating Class Members will be paid from the Qualified Settlement Fund.

2.6 **Access to the Settlement Claims Administrator.** The Parties will have equal access to the Settlement Claims Administrator. Class Counsel and Defense Counsel shall provide the Settlement Claims Administrator with information necessary to calculate the Settlement Checks, and reasonably assist the Settlement Claims Administrator in locating Class Members. Class Counsel shall be provided the same data as the Claims Administrator, with names and identifying information redacted, to the extent that Class Counsel may analyze such data as confirmatory discovery. Class Counsel shall share its calculations in spreadsheet form with Defense Counsel and Class Counsel for all calculations pertaining to the administration as requested by Class Counsel, including how Individual Net Amounts were calculated.

**2.7    Scheduling Dates.**

        (A)    The following summarizes the dates that shall govern the schedule in this Action:

| | |
|---|---|
| Within ten (10) days of the Court issuing a Preliminary Approval Order. | Parties shall engage the Settlement Claims Administrator. |
| Within ten (10) days of the signing of this Agreement by all Parties. | Class Counsel shall file the unopposed Motion for Preliminary Approval. |
| Within fourteen (14) days of the Court issuing the Preliminary Approval Order. | Defendants will provide the Settlement Claims Administrator with the Class Member mailing list as set forth in this Agreement ("Class List"). |
| Within thirty (30) days after receipt of the Class Member Mailing List. | Mailing of Notice of Class Action Settlement and Claim Form by the Settlement Claims Administrator. |
| 60 days after date of first mailing of Class Notice. | Last day for Class Members to submit written objections to the Settlement. |
| 60 days after date of first mailing of Class Notice. | Last day for Class Members to file Request for Exclusions from the Settlement. |
| 60 days after date of first mailing of Class Notice. | Last day for Class Members to submit a Valid Claim Form ("Bar Date"). |
| 30 days after the Bar Date | Unless otherwise agreed to by the parties or directed by the Court, the last day for Class Members who failed to file the Claim Form by the Bar Date due to such factors as change of address, military service, hospitalization or other extraordinary circumstances. |

| | |
|---|---|
| Fifteen (15) days after Bar Date. | Settlement Claims Administrator shall certify jointly to Plaintiffs' Counsel and to Defense Counsel the following: (a) a list of all Objectors, with a copy of each objection; (b) a list of all opt- outs, with a copy of each opt-out form; (c) a list of all Authorized Claimants who timely submitted Claim Forms during the Claim Period; and (d) a list of all Authorized Claimants who submitted late or otherwise defective Claim Forms. |
| Ten (10) days before the Final Settlement Hearing. | Class Counsel shall file any objections with the Court. |
| Ten (10) days before the Final Settlement Hearing. | Last day for Plaintiff to file and serve papers in support of final settlement approval with the Court. |
| No earlier than 140 days plus the number of days set by the Court for the Bar Date after Preliminary Approval Order Signed | Fairness Hearing. |
| Thirty (30) days after the Final Approval Order approving this Agreement is signed. | Final Effective Date |
| Within thirty (30) days after the Court issues the Final Approval Order. | Defendants shall fund the Qualified Settlement Fund by wire transfer. |

(B)     Class Counsel shall file a Motion for Preliminary Approval as provided above, which shall include: (i) the proposed Notice as agreed upon by the Parties, (ii) the proposed Claim Form, (iii) the proposed Preliminary Approval Order, (iv) an executed version of this Agreement, and (v) the necessary documents, memorandum, affidavits and exhibits for the purposes of certifying, for settlement purposes only, a Class under Rule 23 of the FRCP, and preliminarily approving the settlement. The proposed Notice, proposed Claim Form and proposed Preliminary Approval Order approved by the Parties shall be annexed to Class Counsel's Affirmation in support of this proposed settlement. Class Counsel shall provide Defense Counsel with a draft of the Preliminary Approval Motion and attachments within ten days of the signing of this Agreement to ensure such documents

are consistent with this Agreement and Defense Counsel shall notify Class Counsel, in writing, not later than ten days after delivery of the draft documents of any changes or objections thereto.

(C)    In the Motion for Preliminary Approval, Class Counsel shall seek the implementation of dates for effectuating the terms of this Agreement, including: (i) the setting of the Bar Date for individuals to submit Claim Forms, opt-out of this Agreement and/or provide objections to this Agreement, which date will be a number of days fixed by the Court from the initial mailing of Notice and Claims Forms to the Class Members by the Settlement Claims Administrator, and (ii) to the extent required by the Court, a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date with all such dates consistent with the foregoing chart.

(D)    In the Motion for Preliminary Approval, Class Counsel shall inform the Court of the intended process to obtain a "Final Approval Order" in accordance with the Court approved schedule, so that at the Fairness Hearing, the Court may among other things: (i) approve the settlement as fair, adequate, and reasonable; (ii) incorporate the terms of the Release, as described herein; (iii) dismiss the Action with prejudice; (iv) award Class Counsel's attorneys' fees, costs, and expenses; (v) award Settlement Claims Administrator's fees and costs; (vi) award Service Awards; (vii) authorize distribution and payment to Claimants, (viii) enter the Final Approval Order, and (ix) effectuate any other relief necessary to effectuate this Agreement.

(E)    Named Plaintiff will file the Motion for Preliminary Approval and Motion for Final Approval as "unopposed," except as to matters therein that are inconsistent with this Agreement or any term or provision hereof.

**2.8    Notice and Claim Forms to Class.**

(A)    Within fourteen (14) days of the Preliminary Approval Order being so-ordered by the Court, Defense Counsel shall provide the Settlement Claims Administrator and Class Counsel the Class Member List in electronic form. All information provided regarding the Class Members will be treated as confidential information by the Settlement Claims Administrator and Class Counsel and may not be used by the Settlement Claims Administrator or Class Counsel for any purpose other than to effectuate the terms of this Agreement.

(B)    Claim Forms may be filed with the Settlement Claims Administrator via mail, email, or facsimile. Class Members that send their Claim Forms by the Bar Date will be deemed Claimants. To be effective for the purposes of becoming a Claimant, a Claim

Form must be post-marked, emailed, or faxed to the Settlement Claims Administrator by the Bar Date. The Bar Date shall be: (i) a number of days from the date of the initial mailing fixed by the Court, and (ii) unless otherwise agreed to by the Parties or directed by the Court, an additional time equal to the days compromising the Bar Date for any Class Members who did not receive the Notice, or were unable to file the Claim Form within the time period outline in (i) *supra* due to such factors as change of address, military service, hospitalization, or other extraordinary circumstances. To the extent that the envelope does not contain a post-mark, the date that the Class Administrator stamps the envelope or claim form "received" shall apply.

(C)    Class Members who timely complete and return a Claim Form post-marked by the Bar Date will additionally be deemed Claimants. Defendants shall fund only the amounts allocated to each Claimant who returns a Claim Form as set forth in this Agreement as described in Sections 3.1 and 3.5, as well as Class Counsel's attorneys' fees, costs, and expenses, Settlement Claims Administrator's fees and costs, Service Awards, the Reserve Amount, or upon other agreement by the Parties. Defendants shall have no obligation to pay or fund any amounts allocated to Class Members who do not submit a Claim Form as set forth in this Agreement. For purposes of this Agreement, Named Plaintiff is deemed to be a Claimant, and is not required to return or execute Claim Forms but will be required to submit completed and signed IRS Forms W-9 and/or W-4.

**2.9    Opt-outs.**

(A)    Class Members who choose to opt-out of the settlement as set forth in this Agreement must submit a written, signed statement that includes their full name, address, and telephone number, to the Settlement Claims Administrator via First Class United States Mail, email, or facsimile. To be effective, an opt-out statement must be post-marked, faxed, or emailed on or before the Bar Date.

(B)    The last day to opt-out of the settlement ("Opt-out Period") shall be the Bar Date.

(C)    The Settlement Claims Administrator will stamp the received date on the original of each opt-out statement that it receives and shall serve copies of each opt-out statement on Class Counsel and Defense Counsel not later than three (3) days after receipt. The Settlement Claims Administrator will, within 24 hours of the end of the Opt-out Period, send a final list of all Opt-out statements to Class Counsel and Defense Counsel. The Settlement Claims Administrator will retain the stamped originals of all opt-out statements and originals of all envelopes accompanying opt-out statements in its files until

such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

**2.10  Objections to Settlement.**

(A)    Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing and must also file a Claim Form. To be considered, such statement must be submitted to the Settlement Claims Administrator via First Class United States Mail, email, or facsimile. The statement must be post-marked, faxed, or emailed on or before the Bar Date, and must include all reasons for the objection and any supporting documentation. The statement must also include the name, address, and telephone numbers for the Class Member making the objection and signed by such objecting Class Member. No single objection statement may be made or filed on behalf of multiple Class Members. The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection and supporting documents to Class Counsel and Defense Counsel by email delivery no later than three (3) days after receipt of the objection. Class Counsel will also file the date-stamped originals of any and all objections with the Court within ten (10) days prior to the Final Fairness Hearing.

(B)    No Class Member who has elected to opt-out may submit an objection to the settlement.

(C)    The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.11  Fairness Hearing, Final Approval Motion, and Dismissal.**

(A)    After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and, to the extent scheduled by the Court, in advance of the Fairness Hearing, Class Counsel shall file supporting documents and materials for Final Approval of the settlement ("Final Approval Motion"). The Final Approval Motion may contain a report from the Settlement Claims Administrator, an application for attorneys' fees, costs, and expenses, and supporting exhibits from Class Counsel regarding the fairness, adequacy, and reasonableness of the settlement or any aspect related to this Agreement and such other and further documentation as may be appropriate in support. The Final Approval Motion may also include a proposed Final Approval Order.

(B)    At the Fairness Hearing and/or through the Final Approval Motion, the Parties shall request that the Court, among other things issue an Order that shall: (i) approve the settlement and Agreement as fair, reasonable, adequate, and binding; (ii) order the

Settlement Claims Administrator to distribute Settlement Checks to the Claimants, including Service Awards as described in this Agreement to be paid from the QSF; (iii) order Class Counsels' attorneys' fees, costs, and expenses, Settlement Claims Administrator's fees and costs, and Service Awards to be paid from the QSF; and (iv) order the dismissal with prejudice of the Action.

(C)    The Final Approval Order will order the Settlement Claims Administrator to (i) provide verification to Class Counsel and Defense Counsel that it has distributed the Settlement Checks and made proper withholdings, and (ii) retain copies of all of the endorsed Settlement Checks.

(D)    The settlement payments contemplated hereunder are expressly contingent on the Court's issuance of the Final Approval Order. If the Court refuses or otherwise fails to issue a Final Approval Order, the Parties shall return to their positions in the Litigation prior to the filing of the motion for preliminary approval of the settlement.

## 2.12  Termination of Agreement.

(A)    **Grounds for Settlement Termination.**

1.    Either Party may terminate the Agreement if the Court declines to enter the Preliminary Approval Order or Final Approval Order (or such other orders that the Court sees fit that preliminarily approves this settlement and provides final approval of the settlement consistent with the terms of this Agreement), except if the Court declines to enter such orders because of the attorneys' fees sought by Class Counsel and/or the Service Awards to be paid from the QSF, or enters such orders with modifications to the attorney's fees sought by Class Counsel and/or the Service Awards to be paid from the QSF. This Agreement is not contingent upon approval by the Court of Class Counsel's application for attorneys' fees, costs, and expenses and Service Awards, and if the Court approves the settlement payment amount allocated to the Claimants as set forth in this Agreement, but not the application for attorneys' fees, costs, and expenses and Service Awards: (i) the Agreement may not be terminated, and (ii) after final determination from any motion for reconsideration and/or any appeal that is brought, any Court-required reduction of the attorneys' fees or Service Awards will be returned to the Defendants.

2.    Defendants will have the option to void the agreement if ten percent (10%) or more Class Members opt-out of the settlement. In the event that

Defendants void the agreement, Defendants shall be responsible for all of the Settlement Administrator's fees including any costs or fees associated with the mailing of a second notice notifying Class Members that the Settlement Agreement is void and the litigation will be continuing.

(B)    **Procedures for Termination.** Before terminating this Agreement, Defense Counsel must notify Class Counsel of its intent to do so in writing no later than fifteen (15) days before the scheduled Fairness Hearing. If the Parties are unable to reach agreement as to modifications to preserve this Agreement, they shall jointly notify the Settlement Administrator and the Court that the Agreement has been terminated.

(C)    **Effect of Termination.** Termination shall have the following effects:

1.    The Agreement shall be terminated as to the affected Parties and shall have no force or effect.

2.    Defendants shall have no obligation to make any payments to any party, Class Member, Claimant, or Class Counsel. However, the Parties shall be jointly responsible for the reasonable costs, fees and expenses of the Settlement Claims Administrator, unless Defendants unilaterally terminate the Agreement, in which case Defendants shall be solely responsible for the reasonable costs, fees and expenses of the Settlement Claims Administrator.

3.    The Settlement Claims Administrator will provide a Court-approved notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail.

4.    The Parties may jointly or individually seek reconsideration of a ruling by the Court declining to enter the Preliminary Approval Order or Final Approval Order in the form submitted by the Parties, or to seek Court approval of a renegotiated settlement.

5.    The Litigation will resume as if no settlement had been attempted or reached; this Agreement, all portions of it, and the circumstances leading to it will not be admissible as evidence in the Litigation; and all negotiations, statements, and proceedings relating to the attempted settlement shall be without prejudice to the rights of any of the Parties; and the Parties shall be

restored to their respective positions prior to the settlement. The Parties may endeavor to resolve the matter jointly if settlement is not consummated for any reason other than either Party's choice. Defendants retain the right to contest whether the Litigation should be maintained as a class action, and to contest the merits of the claims being asserted in the Litigation. To the extent requested by Defendants, Class Counsel shall return all documents produced by Defendants to effectuate this settlement, including the Class Member List, and shall retain no copies thereof nor any of the information contained therein or thereon.

## 3    SETTLEMENT TERMS

### 3.1    Settlement Amount.

(A)    **Gross Settlement Fund.** Defendants jointly and severally agree to pay a sum not to exceed the Gross Settlement Fund as defined in Section 1.17.

(B)    Defendants shall fund the QSF in an amount equal to sum of (i) the Net Filed Claims Amount, (ii) Settlement Claims Administrators' fees and costs; (iii) Class Counsel's attorneys' fees, costs, and expenses; (iv) Services Award to Named Plaintiff, (v) Reserve Amount; (vi) Employment Taxes, and (vii) all such other fees and costs as provided in this Agreement.

(C)    The Settlement Claims Administrator shall set aside the Reserve Amount to cover any errors or omissions (e.g., individual employees who dispute the amounts allocated to them; employees who allege they should be part of the Class). The Reserve Amount shall not be used to pay a Claimant whose name was not on the Class Member List. Said Claimant shall be paid from the Gross Settlement Fund. The Reserve Amount will remain in the QSF and any part of it remaining after any correctable errors or omissions are covered will revert to Defendants and be paid over to Defendants by the Settlement Claims Administrator. Any Class Member or purported Class Member who wishes to challenge any error or omission shall provide a written statement to the Settlement Claims Administrator as to why the error or omission should be corrected. All claims relating to errors or omissions shall be submitted no later than 120 days after the Distribution Date with any disputes resolved by the Settlement Mediator. In the event determined errors and omissions exceed the Reserve Amount, payments from the Reserve Amount shall be prorated.

(D)    Any uncashed Settlement Checks one hundred eighty (180) calendar days after mailing will be deposited by the Claims Administrator with the New York State

Comptroller's Office – Office of Unclaimed Funds, identified in each respective amount under the name of each intended recipient.

**3.2    Mailing of Settlement Checks.** The Settlement Claims Administrator shall mail the Settlement Checks and Service Award Checks and shall wire transfer Class Counsel's approved fees, costs, and expenses no later than 15 days after the Fully Funded Date (the "Distribution Date").

**3.3    Attorneys' Fees, Costs, and Expenses.**

(A)    Through the Final Approval Motion, Class Counsel will petition the Court for an award of attorneys' fees and costs of up to Four Hundred Thirty Three Thousand Three Hundred and Thirty Three Dollars ($433,333.33) or One-Third (1/3) of the Gross Settlement Fund, plus their actual litigation expenses and costs, to be paid from the QSF. Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court to the extent consistent with this Agreement.

(B)    The substance of Class Counsel's application for attorneys' fees, expenses, and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses, and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Final Approval Motion.

**3.4    Service Award to Named Plaintiff.**

(A)    In return for services rendered to the Class Members, Claimants, and the Settlement Class, and in exchange for the execution of a general release of claims, Named Plaintiff will apply to the Court to receive no more than $25,000, exclusive of her Individual Allocated Amounts, as a Service Award ("Service Award") from the QSF.

(B)    The application for the Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for the Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Final Approval Motion. Defendants will not oppose Plaintiffs' application for the Service Award to the extent consistent with this Agreement.

3.5    **Settlement Fund Formula.** Participating Class Members' proportionate shares of the Settlement Fund shall be computed pursuant to the following formula:

(A)    "Individual Numerator" shall be the number of weeks each individual worked for Defendants during the Class Period. The "Total Denominator" shall be determined by adding together each Individual Numerator. Each Class Member's "Distribution Percentage" shall be determined by dividing each such person's Individual Numerator by the Total Denominator. The "Individual Settlement Amount" for each class member shall be determined by multiplying each such person's Distribution Percentage by the Net Settlement Fund.

(B)    Only Participating Class Members shall be entitled to receive their Individual Settlement Amount.

3.6    **Tax Characterization.**

(A)    Payments to Claimants under Section 3.5 of this Agreement will be deemed 50% W-2 wage income subject to applicable payroll and withholding taxes and 50% non-wage income reportable on an IRS Form 1099 in box 3 to the extent required by law. Service Awards shall also be deemed non-wage income and reported on an IRS Form 1099 to the extent required by law. Each Claimant receiving a payment may provide a completed and signed IRS Form W-4 and IRS Form W-9 to be provided by the Settlement Administrator along with the completed Claim Form. Alternatively, the Settlement Administrator may use withholding information already on file with Defendants from prior IRS Form W-4 documents, or may take maximum withholdings in lieu of such form.

(B)    All wage income payments shall be subject to all applicable employment taxes as required by law, including, without limitation, federal, state, and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") on an IRS Form W-2. All non-wage income payments shall be made without any tax withholdings and shall be reflected on an IRS Form 1099 in box 3 issued to each Claimant to the extent required by law. Payments of attorneys' fees, costs, and expenses pursuant to Section 3.3 shall be made without any withholdings. Class Counsel will provide a completed and signed IRS Form W-9 and receive an IRS Form 1099 for this payment.

(C)    The Settlement Administrator shall be responsible for calculating and making all withholdings from the employees' settlement payments required pursuant to the employee's share of any federal, state, or local tax law or regulation, with respect to the wage payments.  The Settlement Administrator shall also be responsible for calculating the

Employment Taxes as set forth in Section 1.18, which shall be paid by the Defendants and funded into the QSF within seven (7) days after the Final Effective Date.

**3.7    Hold Harmless.** With respect to payments received pursuant to this Agreement that are not characterized as W-2 wage income, Named Plaintiff and Claimants assume full responsibility of any and all federal, state, and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS or other appropriate regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state, or local government, administrative agency, or court determines that any individual or entity and/or Defendants are liable for any failure by any Named Plaintiff or Claimant to pay federal, state, or local income or employment or payroll taxes with respect to any payment received pursuant to this settlement that is not characterized as W-2 wage income, Named Plaintiff and Claimants agree to hold Defendants harmless, and indemnify Defendants from any payments that Defendants may be required to make (including any payments for interest and penalties) to any taxing authority resulting from any Named Plaintiff or Claimant's failure to pay any taxes that any such individual or entity owes related to payments received pursuant to this Agreement that are not characterized as W-2 wage income.

**4    RELEASE**

**4.1    Release of Claims.**

(A)    <u>Release by Named Plaintiff and Claimants.</u> By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement Named Plaintiff and each Claimant, each on behalf of themselves and their respective heirs, executors, administrators, successors and assigns, voluntarily forever and fully releases and discharges Defendants, and with respect to each individual Defendant, its past, present, and future: predecessors, successors, heirs, executors, trustees, administrators, assigns, parent entities, subsidiary entities, owners, beneficial owners, members, board members, shareholders, stockholders, investors, officers, directors, managers, employees, agents, consultants, attorneys (including, but not limited to, Milber Makris Plousadis & Seiden, LLP), advisors, representatives, and insurers (including, but not limited to, United States Liability Insurance Group) from all wage and hour: actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, known or unknown, asserted or unasserted, which the Class

Member may have had against Defendants from the beginning of the world up to the date of the Preliminary Approval Order. This release specifically includes, but is not limited to, all alleged violations of the Fair Labor Standards Act, 29 U.SC. § 201 *et seq.* ("FLSA"), the New York Labor Law, all New York Wage Orders, and any other federal, state, city or local law, rule, regulation, guideline, constitution and/or ordinance governing the payment of wages, minimum wage, spread of hours, overtime, or any similar wage-related claim, as well as all claims for costs, fees, expenses, and/or attorneys' fees.

(B)    In addition, Claimants will acknowledge their release of such claims through the signature line on their opt-in Claim Form. The Claim Form shall contain the following language:

> *By signing this Claim Form, I consent to participate in this settlement against NYC Harlem Food Inc. et al. ("Defendants") in the lawsuit titled Medina v. NYC Harlem Food Inc. et al., Southern District of New York, Civil Case No. 21-CV-1321, for alleged unpaid wages, including minimum wage and overtime. I hereby release Defendants and with respect to each Defendant its past, present, and future: predecessors, successors, heirs, executors, trustees, administrators, assigns, parent entities, subsidiary entities, owners, beneficial owners, members, board members, shareholders, stockholders, investors, officers, directors, managers, employees agents, consultants, attorneys, advisors, representatives, and insurers from all wage and hour claims under the Fair Labor Standards Act and the New York Labor Law (and the governing regulations thereunder) for unpaid wages (including minimum wage and overtime) and wage notice violations which have been brought or could have been brought in the Litigation or that are based on the same facts and circumstances as the claims in the Litigation from February 15, 2015 to [the date of preliminary approval], and expressly release any such claims. I further understand that nothing in this release or my participation in this settlement shall in any way release or relinquish claims I may possess under the workers' compensation law, for unemployment benefits, or arising in tort for personal injury.*

(C)    <u>Release of Claims by Silent Class Members.</u> The release being provided by Named Plaintiff and the Claimants herein shall be considered binding on all Silent Class Members, with the exception that Silent Class Members do not release any claims which may be brought pursuant to the FLSA. Silent Class Members shall not be entitled to any payment from the QSF, or from Defendants at any other time, in relation to this settlement and release.

**4.2    Denial of Liability.** Defendants agree to the terms of this Agreement without in any way admitting, and expressly denying, any fault or liability of any kind, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of the Litigation. Nothing in this Agreement shall be deemed, or used as, an admission of liability by Defendants, nor as an admission that a class or collective should be certified for any purpose in this case other than settlement purposes, and Defendants expressly deny same.

## 5    INTERPRETATION AND ENFORCEMENT

**5.1    Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2    No Assignment.** Class Counsel and Named Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3    Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and shall replace and supersede all prior and/or contemporaneous negotiations and understandings between the Parties.

**5.4    Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns notwithstanding any changes in the law.

**5.5    Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.6    Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7**    **Governing Law.** This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.8**    **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**5.9**    **Waivers, etc. To Be in Writing.** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, and signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.10**    **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.11**    **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**5.12**    **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**FOR PLAINTIFFS:**

_____ Dated: __April 11, 2023__

By: James Bouklas, Esq.
BOUKLAS GAYLORD LLP
357 Veterans Memorial Highway
Commack, New York
(516) 742-4949


**FOR DEFENDANTS:**

*TP. Srinivasa Rao*_____ Dated: __04/07/2023__

By: SRINIVASA RAO TUMMALAPENTA