**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARISOL MEDINA, individually and on behalf of all others similarly situated, | Civil Action No.: 21-CV-1321 |
| Plaintiff, | |
| v. | |
| NYC HARLEM FOODS INC, BRONX 163 FOODS INC., BRONX MARKET FOODS INC, NYC 143 FOODS INC, NYC 96 FOODS INC, NYC 89 FOODS INC, NYC PARK FOODS INC, NYC 125 FOODS INC, NYC 159 FOODS INC, NYC 155 FOODS INC, SUNNYSIDE BK QSR INC, NYC 116 BK QSR INC, NYC 116 FOODS INC, NYC 121 FOODS INC, NYC 114 FOODS INC, BRONX PROSPECT FOODS INC., NYC 145 FOODS INC., NYC LENOX FOODS INC., NYC 178 FOODS INC., BRONX 138 FOODS INC., RV EASTCHESTER FOODS INC., NYC 148 FOODS INC., NYC LEXINGTON FOODS INC., NYC 161 FOODS INC., BRONX 170 FOODS INC., ANDHRA FOODS INC., SOMYA FOODS, INC., RVN FOODS INC., and SRINIVASA RAO TUMMALAPENTA, individually, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR ORDER CONFIRMING CERTIFICATION OF THE CLASS ACTION SETTLEMENT AND GRANTING FINAL APPROVAL OF THE SETTLEMENT

Submitted by:

Bouklas Gaylord LLP
*Attorneys for Plaintiffs*
357 Veterans Memorial Highway
Commack, New York 11725

## TABLE OF CONTENTS

Table of Contents ………………………………………………….. 1

Table of Authorities ………………………………………………….. iii

Introduction …………………………………..………………………….. 1

Factual Background ……………………………………………………… 2

    I.    Negotiations and Settlement …………………………………….. 2

    II.    The Court Provisionally Certified the Class, and Granted
    Preliminary Approval to the Settlement Agreement ……………… 3

    III.    Settlement Amount ……………………………………………… 3

    IV.    Plan of Allocation …………………………………………….. 3

    V.    Release of Claims …………………………………………….. 5

    VI.    Settlement Administration ……………………………………. 6

Argument ………………………………………………………………… 7

    I.    The Court Should Grant Final Certification of the Class …………. 7

        A.  Confirmation of Certification of the Settlement is
        Appropriate ……………………………………………. 7

    II.    The Court Should Grant Final Approval of the Settlement and
    Enter Judgment in Accordance with the Settlement Agreement …. 7

        A.  Final Approval of the Settlement of the Claims of the Class
        is Appropriate …………………………………………. 7

            1.  The Settlement Agreement is Entitled to a Strong
            Presumption of Fairness Because it was Negotiated at
            Arm's-Length by Experienced Counsel …………………… 8

            2.  The *Grinnel* Factors Support Settlement Approval ………... 9
                i.    Complexity, Expense and Likely Duration ……. 10
                ii.    The Reaction of the Class to the Settlement …… 11
                iii.    Stage of Proceedings and Amount of
                    Discovery ……………………………………. 12

          iv.    The Risks of Establishing Liability and
Damages, and of Maintaining the Class
Through Trial ……………………………… 13

          v.    The Range of Reasonableness of the Settlement
in Light of the Best Possible Recovery and
Attendant Risks of Litigation …………………… 15

III.    Final Approval of the Agreement's Release Language, as Well
as That Contained in the Claim Form and Individual Release
is Appropriate …………………………………………………... 16

IV.    The Court Should Confirm as Final the Appointment of the
Class Representative and Class Counsel …………………………. 17

V.    The Court Should Grant Final Approval to the Form and
Manner of Notice …………………………………………………. 18

VI.    Claims Administration Costs are Being Borne Entirely
By Defendants ……………………………………………………. 18

Conclusion ………………………………………………………………. 19

# TABLE OF AUTHORITIES

## Cases

*Bricker v. Planet Hollywood New York, L.P.,*
    No. 08 CV 443 (WHP), 2009 WL 2603149 (S.D.N.Y. Aug. 13, 2009) …............  10, 11

*Casey v. Citibank*, 2014 WL 4120599 (N.D.N.Y. 2014) …………………………...  11

*Charron v. Wiener,* 731 F.3d, 241 (2nd Cir. 2013) ……………………………………  11

*City of Detroit v. Grinnell Corp.*
    495 F.2d 448, 463 (2d Cir. 1974) …………………………………………...  9

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) ……………………………............  *passim*

*Gilliam v. Addicts Rehabilitation Center Fund*,
    No. 05-VC-3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ………....  16

*Goldberger v. Integrated Res., Inc.*
    209 F.3d 43 (2d Cir. 2000) ……………………………………………………  9

*Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D. 3d 712 (2d Dep't 2024) ……………..  15

*Joel A. v. Giuliani*,
    218 F.3d 132, 138-39 (2d Cir. 2000) …………………………………………..  8

*In re Austria & German Bank Holocaust Litig.*,
    80 F.Supp. 2d 164, 176 (S.D.N.Y. 2000) …………………………………….. 12, 13

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195, 221-22 (5th Cir. 1981) …………………………………………  17

*In re Currency Conversion Fee Antitrust Litig.*,
    2009 WL 3415155, at *12 (S.D.N.Y. Oct. 22, 2009) …………………………..  10, 15

*In re Ira Haupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y. 1969) ………………………..  13

*In re Initial Public Offering Sec. Litig.*,
    671 F.Supp. 2d at 485 (S.D.N.Y. 2009) ………………………………………...  10

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) …………  12

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132, 138 (2d Cir. 1998) . ……………………………………………  8

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
  261 F.3d 355, 366 (3d Cir. 2001) …………………………………………….  8

*In re Prudential Sec. Inc. Ltd P'ships Litig.*,
  163 F.R.D. 200, 209 (S.D.N.Y. 1995) …………………………………………...  16

*In re Sony SXRD Rear Projection Television Class Action Litigation,*
  2008 WL 1956267 (S.D.N.Y. 2008) …………………………………………..  11

*In re Telik, Inc. Sec. Litig.*,
  576 F.Supp. 2d 570, 576-577 (S.D.N.Y. 2008) …………………………………  8

*In re VMS Sec. Litig.*,
  21 F.3d 139, 140- 41 (7th Cir. 1994) …………………………………………....  16

*Lynn's Food Stores, Inc. v. U.S.*,
  679 F.2d 1350 at 1352-53 (11th Cir. 1982) ……………………………………  17

*McBean v. City of New York*, 233 F.R.D. 377, 387 (S.D.N.Y. 2006) …………………….  13

*Plummer v. Chemical Bank*,
  668 F.2d 654, 660 (2d Cir. 1982) ……………………………………………….  12

*TBK Partners, Ltd. v. Western Union Corp.*,
  675 F.2d 456, 460 (2d Cir. 1982) ……………………………………………..  17

*Thompson v. Edward D. Jones & Co.*
  992 F.2d 187 (8th Cir. 1993) ……………………………………………….....  16

*Vega v. CM and Associates Construction Management, LLC*,
  175 A.D.3d 1144 (1st Dep't 2019) ……………………………………………  14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96, 117 (2d Cir. 2005) ……………………………………….............  *passim*

*Wright v. Stern*
  553 F.Supp. 2d 337, 343 (S.D.N.Y. 2008) …………………………………….  12

**<u>Statutes</u>**

Fed. R. Civ. P. 23 …………….....………………………………………………..  *passim*

**<u>Other Authorities</u>**

*Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the*
   *Federal Courts*, 29 Berkeley J Emp &Lab L 269, 292-94 (2008) …………….....   12

Alba Conte & Herbert Newberg, Newberg On Class Actions § 11:41 …………………… 8

## INTRODUCTION

Named Plaintiff Marisol Medina ("Plaintiff" or "Named Plaintiff"), on behalf of all class members (hereinafter collectively referred to as the "Class", and individually referred to as "Class Member(s)"), and Defendants NYC Harlem Foods Inc, Bronx 163 Foods Inc., Bronx Market Foods Inc, NYC 143 Foods Inc,  NYC 96 Foods Inc, NYC 89 Foods Inc, NYC Park Foods Inc, NYC 125 Foods Inc, NYC 159 Foods Inc, NYC 155 Foods Inc, Sunnyside BK QSR INC, NYC 116 BK QSR INC, NYC 116 Foods Inc, NYC 121 Foods Inc, NYC 114 Foods Inc, Bronx Prospect Foods Inc., NYC 145 Foods Inc., NYC Lenox Foods Inc., NYC 178 Foods Inc., Bronx 138 Foods Inc., RV Eastchester Foods Inc., NYC 148 Foods Inc., NYC Lexington Foods Inc., NYC 161 Foods Inc., Bronx 170 Foods Inc., Andhra Foods Inc., Somya Foods, Inc., RVN Foods Inc., and Srinivasa Rao Tummalapenta[1] (collectively, "Defendants") (together with Plaintiff, the "Parties") request that this Court grant final approval of the Parties' settlement of Plaintiff's claims for unpaid wages under the FLSA and the wage laws of the State of New York (the "Settlement"). This Settlement, in the total amount of $1,300,000, is "fair, reasonable, and adequate" within the meaning of Federal Rule of Civil Procedure 23(e). The response of the Class has shown overwhelming support to the Settlement. No Class Member has objected to the Settlement, and only two Class Members have opted out. The Claims Administrator successfully sent Notice Materials to all Class Members. (Kulak Decl. ¶ 9-10). Further, the Claims Administrator has made a concerted effort to find updated contact information for Class Members whose Notice Materials were returned as undeliverable. (*Id*. ¶ 8).

---

[1] Unless otherwise defined herein, all terms used in the instant motion will have the same meaning as defined in the Settlement Agreement (ECF No. 110-3) that was preliminarily approved by this Court on May 29, 2024.

The proposed Settlement easily satisfies the Second Circuit's standards for settlement approval. Class Counsel have conducted sufficient discovery to enable them to evaluate the claims and defenses in the action. The Settlement is in line with the strength of Plaintiff's claims given the risk, expense, complexity, and likely duration of further litigation absent settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005).

In connection with granting final approval, and for settlement purposes only, the Court should (1) confirm as final its provisional certification under Fed. R. Civ. P. 23(a) and (b)(3) of the Class; (2) grant final approval to the Parties' Settlement; (3) approve as fair the releases of claims set forth in the Agreement and the Individual Release (Agreement at ¶ 4); (4) confirm as final the appointment of Marisol Medina as class representative of the Class; (5) confirm as final the appointment of Bouklas Gaylord, LLP, as Class Counsel of the Class; (6) grant final approval to the form and manner of notice issued to Class Members; and (7) approve the reasonable costs of settlement administration. And, because the Parties' Agreement fully and fairly resolves the claims in this matter, the Court should also enter judgment and dismiss this case with prejudice. Accordingly, this Court should grant the Motion in its entirety.[2]

## FACTUAL BACKGROUND

### A.    Negotiations and Settlement

As described more fully in the Motion of Preliminary Approval, the Parties' negotiations in this matter were lengthy, detailed, and at arms-length, which resulted in an agreement in principle. (Gaylord Decl. at ¶ 3–4). While Defendants do not concede any liability in the case, they entered into the Agreement to avoid the burden, expense, and uncertainty of continued litigation.

---

[2] By separate motion, Class Counsel will apply for attorneys' fees and costs and seek service payments for certain plaintiffs.

Further, based on the risks of litigation, Class Counsel is satisfied that the terms and conditions of the Settlement are fair, reasonable and adequate, and that the Settlement is in the best interest of the Plaintiff and Class Members.

**B.      The Court Provisionally Certified the Class, and Granted Preliminary Approval to the Settlement Agreement**

On January 22, 2024, the Court granted the Parties' motion for an order preliminarily approving the Settlement, provisionally certifying the Class, approving the Notice Materials, and directing distribution of such materials to Class Members, and setting a hearing for final approval (Doc. 111), entering an order effectuating that approval on May 29, 2024 (Doc. 115, Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order")). The Court determined that the Settlement "falls within the range of reasonableness and, therefore, meets the requirements for preliminary approval such that notice to the Class Members is appropriate." *Id*.

**C.      Settlement Amount**

The Agreement preliminarily approved by the Court provides that Defendants will pay a total amount of up to $1,300,000 to: (1) compensate Claimants (as that term is defined in the Agreement); (2) pay court-approved attorneys' fees and costs; (3) pay court-approved service payments to Named Plaintiff; and (4) pay the costs of class administration.

**D.      Plan of Allocation**

Claimants are eligible to receive a specified share of the $1,300,000 settlement fund (the "Settlement Payment"). (Agreement at ¶ 3). Under the Agreement's proposed distribution plan, such Settlement Payments would be allocated based on a formula carefully designed to fully compensate all such individuals. (*Id*.). For Claimants, the Settlement Payments would be computed as follows:

3

- First, the "Net Settlement Amount" shall mean the maximum amounts to potentially be paid to all Claimants from the Gross Settlement Fund. This amount consists of the Gross Settlement Fund amount of One Million Three Hundred Thousand ($1,300,000) subtracted by Class Counsel's attorneys' fees, costs and expenses as defined in Section 3.3, the Settlement Claims Administrators' fees and costs, Services Awards, and the Reserve Amount. (*Id*. at ¶ 1.2);

- Second, the Claims Administrator shall determine an "Individual Numerator" for each Class Member using data provided by Defendants consisting of time records for each Class Member, and shall be based on the amount of weeks worked by each Class Member;

- Third, the "Total Denominator" shall be determined by adding together each Class Member's Individual Numerator;

- Fourth, the "Distribution Percentage" for each Class Member shall be determined by dividing each such person's Individual Numerator by the Total Denominator; and

- Fifth, the Settlement Payment for each Class Member shall be determined by multiplying each such person's Distribution Percentage by the Net Settlement Amount. The Net Settlement Fund.

All Settlement proceeds not paid out to satisfy the foregoing and not distributed as Settlement Payments will be deposited by the Claims Administrator with the New York State Comptroller's Office – Office of Unclaimed Funds, identified in each respective amount under the name of each intended recipient.

### E.    Release of Claims

Under the terms of the Agreement, Named Plaintiff as well as Class Members who do not

opt out will release certain claims. (Agreement at ¶ 4). In this regard, the Release section of the

Agreement provides:

**4.1 Release of Claims.**

(A) Release by Named Plaintiff and Claimants. By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement Named Plaintiff and each Claimant, each on behalf of themselves and their respective heirs, executors, administrators, successors and assigns, voluntarily forever and fully releases and discharges Defendants, and with respect to each individual Defendant, its past, present, and future: predecessors, successors, heirs, executors, trustees, administrators, assigns, parent entities, subsidiary entities, owners, beneficial owners, members, board members, shareholders, stockholders, investors, officers, directors, managers, employees, agents, consultants, attorneys (including, but not limited to, Milber Makris Plousadis & Seiden, LLP), advisors, representatives, and insurers (including, but not limited to, United States Liability Insurance Group) from all wage and hour: actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, known or unknown, asserted or unasserted, which the Class Member may have had against Defendants from the beginning of the world up to the date of the Preliminary Approval Order. This release specifically includes, but is not limited to, all alleged violations of the Fair Labor Standards Act, 29 U.SC. § 201 et seq. ("FLSA"), the New York Labor Law, all New York Wage Orders, and any other federal, state, city or local law, rule, regulation, guideline, constitution and/or ordinance governing the payment of wages, minimum wage, spread of hours, overtime, or any similar wage-related claim, as well as all claims for costs, fees, expenses, and/or attorneys' fees.

(B) In addition, Claimants will acknowledge their release of such claims through the signature line on their opt-in Claim Form. The Claim Form shall contain the following language:

*By signing this Claim Form, I consent to participate in this settlement against NYC Harlem Food Inc. et al. ("Defendants") in the lawsuit titled Medina v. NYC Harlem Food Inc. et al., Southern District of New York, Civil Case No. 21-CV-1321, for alleged unpaid wages, including minimum wage and overtime. I hereby release Defendants and with respect to each Defendant its past, present, and future: predecessors, successors, heirs, executors, trustees, administrators, assigns, parent entities, subsidiary entities, owners, beneficial owners, members, board members, shareholders, stockholders, investors, officers, directors, managers, employees agents, consultants, attorneys, advisors, representatives, and insurers from all wage and hour claims under the Fair Labor Standards Act and the New York Labor Law (and the governing regulations thereunder) for unpaid wages (including minimum wage and overtime) and wage notice violations which have been brought or could have been brought in the Litigation or that are based on the same facts and circumstances as the claims in the Litigation from February 15, 2015 to [the date of preliminary approval], and expressly release any such claims. I further understand that nothing in this release or my participation in this settlement shall in any way release or relinquish claims I may possess under the*

*workers' compensation law, for unemployment benefits, or arising in tort for personal injury.*

(C) Release of Claims by Silent Class Members. The release being provided by Named Plaintiff and the Claimants herein shall be considered binding on all Silent Class Members, with the exception that Silent Class Members do not release any claims which may be brought pursuant to the FLSA. Silent Class Members shall not be entitled to any payment from the QSF, or from Defendants at any other time, in relation to this settlement and release.

### F.    Settlement Administration

Pursuant to the Preliminary Approval Order, the Claims Administrator mailed and emailed Class Notice to 1,991 Class Members on July 1, 2024. (Preliminary Approval Order ¶ 22; Kulak Decl. ¶ 7). During the claim period, an additional 35 Class Members were determined to properly be Class Members and received Notice Packets. Class Members who wished to opt out of the settlement were required to submit a written Opt-Out Statement to the Claims Administrator. (Agreement ¶ 2.9). To be considered timely, an Opt-Out Statement must have been mailed, emailed, or faxed to the Settlement Claims Administrator by August 30, 2024. (*Id*.; Preliminary Approval Order ¶ 22).

Class Members who do not opt out are eligible to receive a shared of the Qualified Settlement Fund. (Agreement ¶ 1.25, 3). Through the Claims Administrators' due diligence, all identified Class Members were served with the Notice Packet. There were only two opt-outs of the 2,026 Class Members that received notice. (Kulak Decl. ¶ 12, 14). No Class Members objected. (Kulak Decl. ¶ 12, 15). Any Class Member who failed to submit a timely and properly completed Opt-Out Statement will be bound by the Final Judgment.[3]

---

[3] The Claims Administrator also made an attempt to locate updated address information for Class Members whose Notice materials were returned as undeliverable. Specifically, 29 packets of Notices to Class Members were returned to the Claims Administrator as undeliverable. (Kulak Decl. ¶ 9) Of the 29 undeliverable Notice packages, more current addresses were found through SkipTracing.com, an information supplier, for all 29 Class Members and Notice packages were promptly re-mailed to those Class Members via U.S. First Class mail. (*Id.*)

<u>**ARGUMENT**</u>

**I.      The Court Should Grant Final Class Certification of the Class.**

Plaintiff requests that the Court grant final certification of the Class pursuant to Fed. R. Civ. P. 23 for purposes of settlement.

**A.  Confirmation of Certification of the Settlement Class is Appropriate.**

This Court's May 29, 2024 Order (Doc. 115) provisionally certified the Class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Court ruled that, for purposes of settlement, the Class met all of the Rule 23 requirements. Also, in its Order, the Court appointed Plaintiff Marisol Medina as Class Representative and Plaintiff's counsel as Class Counsel. No Class Member has objected to class certification, or to the appointment of the class representative, or the appointment of Bouklas Gaylord LLP as Class Counsel. (Kulak Decl. ¶ 12-15). For these reasons, and the reasons set forth in the Motion for Preliminary Approval, Plaintiff requests that the Court confirm class certification and the appointment of the class representative and class counsel for purposes of settlement. Defendants do not oppose Plaintiff's request for purposes of settlement only.

**II.     The Court Should Grant Final Approval of the Settlement and Enter Judgment in Accordance with the Settlement Agreement.**

**A.  Final Approval of the Settlement of the Claims of the Class is Appropriate.**

"'The compromise of complex litigation is encouraged by the courts and favored by public policy.'" *Wal-Mart Stores*, 396 F.3d at 117 (quoting 4 Alba Conte & Herbert Newberg, Newberg On Class Actions § 11:41, at 87) (4th ed. 2002). The Second Circuit is "mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'" *Id.* (quoting *In re PaineWebber Ltd. P'ships Litig*., 147 F.3d 132, 138 (2d Cir. 1998)). As such, class action lawsuits readily lend themselves to compromise because of the difficulties

of proof, the uncertainties of the outcome and the typical length of the litigation. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) ("[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.") (citation omitted). Therefore, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To finally approve a class action settlement, the "court must find that the settlement is 'fair, adequate, and reasonable, and not a product of collusion.'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)). The settlement in this case meets this standard.

### 1. The Settlement Agreement is Entitled to a Strong Presumption of Fairness Because it was Negotiated at Arm's-Length by Experienced Counsel.

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.'" *Frank*, 228 F.R.D. at 184 (quoting *Wal-Mart Stores Inc*., 396 F.3d at 116). *See also In re Telik, Inc. Sec. Litig.*, 576 F.Supp. 2d 570, 576-577 (S.D.N.Y. 2008) ("[A] strong presumption of fairness attaches to a class action settlement reached in arm's-length negotiations among able counsel."). Further, "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *Id.* (internal citation omitted).

As discussed above and in the Parties' Motion for Preliminary Approval, the Agreement was reached after extensive discovery followed by arms-length negotiations involving competent and experienced counsel for the Parties. (*See* Gaylord Decl. ¶ 3–4). The Parties engaged in

mediation with Patrick McKenna, a highly experienced and well-regarded mediator with extensive experience mediation wage and hour claims. The Parties engaged in an all-day mediation and several more days of extensive negotiation prior to reaching a settlement in principle. Following the settlement, Defendants provided additional confirmatory discovery which was analyzed by Class Counsel. *Id*.

Plaintiff's attorneys are well-versed in prosecuting and litigating class action wage and hour suits like this one. (*Id.* at ¶ 11). Similarly, Defendants' counsel have extensive experience in defending FLSA and state-law wage and hour class and collective actions. Here, counsel for both Parties endorse the settlement as fair, adequate, and reasonable. For these reasons, the process leading to the Agreement was fair and reasonable.

## 2. The *Grinnel* Factors Support Settlement Approval.

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("Grinnell"). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. The weight of individual *Grinnell* factors "will vary based on the facts and circumstances of the case." *Wright v. Stern*, 553 F.Supp. 2d 337, 343 (S.D.N.Y. 2008); *see also Bricker v. Planet Hollywood*

*New York, L.P.,* No. 08 CV 443 (WHP), 2009 WL 2603149, at *2 (S.D.N.Y. Aug. 13, 2009). Here, all of the *Grinnell* factors weigh in favor of approval of the settlement.

### i.      Complexity, Expense and Likely Duration

The majority of class actions are, by their very nature, "inherently complex." *Frank*, 228 F.R.D. at 184-85 (finding a $75,000 wage-and-hour matter complex, noting that "the costs of continued litigation will be substantial and will quickly outweigh the recovery that could be achieved"). The instant lawsuit began over three years ago. Discovery preceding settlement negotiations involved extensive discovery as sought by Plaintiff. Defendants provided full pay and time records for the Named Plaintiff and for a sampling of potential Class Members for the period relevant to this lawsuit. Without settlement, further litigation in this case would cause additional expense and delay. Defendants would likely file a motion to decertify the provisionally certified class. In addition, each party would likely file motions for summary judgment. If the Court denied the motions, a fact-intensive trial would necessarily follow. A trial would be lengthy and complex and would consume significant time and resources for the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.

The Court has determined that this factor weighs in favor of approval, finding that, "this case, like most class actions, would likely involve significant time, expense, and motion practice." Jan 22 Order, at p.10.

Thus, this factor weighs in favor of settlement approval.

### ii.      The Reaction of the Class to the Settlement

Of the 2,026 Class Members, none have filed an objection and only two have opted out. (Kulak Decl. ¶ 12-15). This reaction by the class strongly weighs in favor of settlement. *See*

*Bricker*, 2009 WL 2603149, at *1 (granting final approval of a settlement where "[n]o class member has objected to the settlement and only three opted out"); *In re Currency Conversion Fee Antitrust Litig.*, 2009 WL 3415155, at *12 (S.D.N.Y. Oct. 22, 2009) (where 1% of members opted out or filed objections, the reaction was "extraordinarily positive … and weighs in favor of settlement"); *In re Initial Public Offering Sec. Litig.*, 671 F.Supp. 2d at 485 (S.D.N.Y. 2009) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted).

Courts routinely approve settlements with both objections and opt-outs. *See In re Sony SXRD Rear Projection Television Class Action Litigation*, 2008 WL 1956267 (S.D.N.Y. 2008); see also *Charron v. Wiener*, 731 F.3d, 241 (2nd Cir. 2013). For example, the Second Circuit in *Charron* found a settlement to be fair, adequate, and reasonable, even though all five class representatives and a total of 118 class members objected to the settlement, and 141 class members opted out. *Charron* at 254. Similarly, the Court granted final approval in *In re Sony* holding that even though 22 class members opted out and 45 class members objected to the settlement, the overall reaction by the class supported settlement. *Id*. at 6; *see also Casey v. Citibank*, 2014 WL 4120599 (N.D.N.Y. 2014) (even if objector's points are valid, if settlement is fair, reasonable, and adequate, Court cannot impose a different settlement on settling parties). Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement. *See In re Sony*. The response here evidences overwhelming support of the settlement by the Class Members. As such, this factor weighs strongly in favor of settlement.

The participation rate is currently 17.97%, and meets or exceeds the expected range of settlement participation. *See* Andrew C. Brunsden*, Hybrid Class Actions, Dual Certification, and*

*Wage Law Enforcement in the Federal Courts*, 29 Berkeley J Emp &Lab L 269, 292-94 (2008) (noting the typical range of claims participation as low as 2%, with a nationwide average of 15%).

The fact that some Class Members chose not to submit a claims form does not speak negatively to the settlement or to the process. Rather, "[t]he fact that the vast majority of class members neither objected to nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F.Supp.2d 337, 344–45 (S.D.N.Y.2008).

### iii.    Stage of Proceedings and Amount of Discovery

"[A] sufficient factual investigation must have been conducted to afford the Court the opportunity to intelligently make an appraisal of the settlement." *Frank*, 228 F.R.D. at 185 (citing *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir. 1982)); *see also In re Austria & German Bank Holocaust Litig.*, 80 F.Supp. 2d 164, 176 (S.D.N.Y. 2000). The purpose of this is to ensure that "the parties have a thorough understanding of the case prior to settlement." *In re Initial Public Offering Sec. Litig.*, 671 F.Supp. 2d at 481 (citation omitted). Here, the discovery meets this standard. Plaintiff's counsel conducted an investigation and legal research on the underlying merits of the potential class claims, the proper measure of damages, and the likelihood of obtaining liquidated and statutory damages. They also researched Defendants' likely affirmative defenses. After filing, Plaintiff's counsel conducted further investigations including, but not limited to, interviewing Plaintiff and another Class Members, participating in discovery, and motion practice. The Parties have engaged in significant discovery. Defendants, at the request of Plaintiff's counsel have provided the time and pay records for Class Members. This information has permitted Plaintiff's counsel to accurately assess damages for the entire relevant period.

The Court has determined that this factor weighs in favor of approval, finding that, "the parties have participated in multiple mediation sessions, engaged in substantial discovery, and

performed sufficient legal research to consider the settlement responsible." Jan 22 Order, at p.10.

Thus, the Parties' discovery efforts in the present case weights strongly in favor of settlement approval.

### iv. The Risks of Establishing Liability and Damages, and of Maintaining the Class Through Trial

"Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of successes by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp. 2d 164, 177 (S.D.N.Y. 2000) (internal quotations omitted). Even in cases where establishing liability appears to be a near certainty, the courts recognize the inherent risks of submitting any claim to a jury. *See McBean v. City of New York*, 233 F.R.D. 377, 387 (S.D.N.Y. 2006) (noting that "there are no guarantees in life, and while it appears likely that plaintiffs would be able to establish liability at trial, things change.")

The risks of establishing liability and damages, and of maintaining the class through trial also weigh in favor of approval. In examining these factors, the Court need not "decide the merits of the case or resolve the unsettled legal questions," but instead should "weigh the likelihood of success by the plaintiff class against the relied offered by settlement." *Frank*, 228 F.R.D. at 185-186 (citation omitted).

Here, although Plaintiff's Counsel believes their case is strong, it is subject to risk. A trial on the merits would involve significant risks for Plaintiff. To the extent a class in certified under Rule 23, the class will be comprised of many former employees of Defendants, a number of whom may not wish to participate in pre-trial discovery, and a trial of this action. Moreover, Plaintiff

would have to overcome any of Defendants' defenses including whether liquidated damages are available for the untimely payment of wages – an open issue in New York State as there is conflicting appellate authority on the matter. *Vega v. CM and Associates Construction Management, LLC*, 175 A.D.3d 1144 (1st Dep't 2019) (holding that biweekly pay constitutes and underpayment); *Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D. 3d 712 (2d Dep't 2024) (declining to follow *Vega* and holding that the biweekly payment of wages does not constitutes nonpayment or underpayment).

While Plaintiff and Class Counsel believe that they could ultimately establish both liability and damages, Defendants are confident in their defenses. Adjudication of these issues would require significant factual development and carries significant risks of success found in any litigation. Plaintiff's Counsel understands that the resolution of liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed Settlement alleviates these uncertainties. This factor therefore weighs in favor of approval. *Id*. at 187. ("If settlement were disapproved, it is likely that [defendant] would challenge the class certification. While plaintiff's might indeed prevail, the risk that the case might not be certified is not illusory and weighs in favor of the Class Settlement").

The Court has determined that this factor weighs in favor of approval, finding that, "Plaintiff acknowledges that a trial would pose significant risks. (Doc. 106 at 16.) For example, putative class members may be unwilling to participate in pre-trial discovery. Further, Plaintiff would need to overcome Defendants' defenses related to statutory exceptions and worker classifications." Jan 22 Order at p.10.

Thus, the risks of continued litigation in the present case absent a settlement strongly support settlement approval.

**v.  The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation**

The Second Circuit has held that a settlement that in within a "range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion" is appropriate. *Wal-Mart Stores*, 396 F.3d at 119. Here, the Settlement amount of $1,300,000 recognizes the Parties' "significant dispute" over the proper measure of damages for individual class members, recognizes both the strengths and weaknesses of the Parties' respective cases, and provides value to the Class Members through a certain and immediate recovery. *See In re Currency Conversion Fee Antitrust Litig.*, 2009 WL 3415155, at *13; *Gilliam v. Addicts Rehabilitation Center Fund*, No. 05-VC-3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) ("[S]ettlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road.") (internal citations omitted).

Class Counsel has spent a significant amount of time and effort analyzing and evaluating the merits of the claims made against Defendants, and the impact of the Agreement on Plaintiff and the Class Members. (Gaylord Decl. ¶ 4.) Specifically, Class Counsel has considered a myriad of factors, including the substantial risks of continued litigation and the possibility that the case, if not settled now, might not result in any recovery or might result in recovery several years from now that is less favorable to Plaintiff and the Class Members than is outlined in the Agreement. *Id.* Moreover, the $1,300,000 is a significant and reasonable sum when one considers that the class could be decertified, or a trial on the merits could result in a zero-dollar trial verdict. This settlement will ensure that the Claimants receive a fair sum in resolution of their claims. *Id.* In light of such considerations, as more fully discussed in Plaintiff's Motion for Preliminary Approval and accompanying supporting affirmations (ECF No. 105–110), Class Counsel is satisfied that the

terms and conditions of the settlement are fair, reasonable and adequate and that the settlement is in the best interests of Plaintiff and the Class Members. *Id*.

The Court has determined that this factor weighs in favor of approval, finding that, "Plaintiff estimates the best possible recovery amounts (including liquidated damages) are: $161,012.34 for the FLSA overtime claims; $900,000 for the NYCRR "uniform maintenance pay" claims; $2 million for the "time shaving" claims; $16 million for the NYLL "untimely pay" claims. (Doc. 106 at 18–21.) In light of the best possible recovery and the inherent risks of litigation, I find the proposed $1,300,000 settlement falls within the range of reasonableness." Jan 22 Order, at p.11.

As such, the factors, like the *Grinnell* factors as a whole, overwhelmingly favor the settlement. This Court should grant final approval to the Agreement as it pertains to the Class.

### III. Final Approval of the Agreement's Release Language, as well as That Contained in the Claim Form and Individual Release is Appropriate.

For Plaintiff and all Class Members who have not opted out of the settlement, the Agreement (at ¶ 4) releases any claims related to, derivative of, or based upon the claims asserted in the Complaint. Courts routinely approve such releases in class actions. *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 191 n.6 (8th Cir. 1993); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001); *In re VMS Sec. Litig.*, 21 F.3d 139, 140- 41 (7th Cir. 1994); *TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 460 (2d Cir. 1982); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221-22 (5th Cir. 1981). The releases for Claimants includes a waiver of FLSA claims. Such a release is proper when it reflects a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 at 1352-53 (11th Cir. 1982).

Here, the Parties had a bona fide dispute regarding the FLSA claims as based upon and

derivative of the New York Labor Law claims, as evidenced by the extensive negotiations in ultimately reaching settlement. After assessing the relative strengths and weaknesses of their respective positions, experienced class counsel engaged in arms-length negotiations resulting in a $1,300,000 settlement fund. To receive a share of the fund, Class members had to file a claim form.

The Court has determined that, "after review of the proposed plan and notice, I conclude that the proposed notice constitutes the best notice practicable under the circumstances, meets the requirements of due process, and satisfies the seven elements of Rule 23(c)(2)(B) identified above." Jan 22 Order, at p.13.

Thus, the Court should confirm as final its approval of the Agreement and the language contained in the releases.

**IV.    The Court Should Confirm as Final the Appointment of the Class Representative and Class Counsel.**

The Court should also confirm as final the appointment of Bouklas Gaylord LLP as class representatives of the Class, and Marisol Medina as class representative of the Class for purposes of settlement. (*see* Preliminary Approval Order ¶¶ 6, 8). No Class Member has objected to these appointments and, as a result, the Court should confirm these appointments as final. Further, the Court has found that, "the Firm [Bouklas Gaylord LLP] has ample experience in class actions and labor law cases. (*Id*. at ¶ 18.) In fact, in several other cases the firm has been described as one with "experienced litigators who have successfully represented classes in class action and have extensive experience in labor law cases." (*Id*. (collecting cases)). I find that the proposed settlement class would be fairly and adequately protected by Bouklas Gaylord LLP and appoint them as class counsel for settlement purposes only." Jan 22 Order, at p.8.

**V.    The Court Should Grant Final Approval to the Form and Manner of Notice.**

This Court should likewise approve the form and manner of notice given to Class Members. In its Preliminary Approval Order, the Court concluded that "the procedures for notifying the Class Members about the settlement as described in the Agreement provide the best notice practicable under the circumstances and therefore meet the requirements of due process, and directs issuance of Notice in accordance with the Agreement." (Preliminary Approval Order ¶ 13). The Court also found that the "Notice to the Class Members satisfies Federal Rule of Civil Procedure 23(c)(2)(B) and adequately puts such Rule 23 Class Members on notice of the proposed settlement." (*Id*. at ¶ 15).

Notably, no Class Members submitted objections to the form or manner of notices. (Kulak Decl. ¶ 15). For these reasons, and the reasons set forth in the Motion for Preliminary Approval, the Court should grant final approval to the form and manner of notice.

## VI.    Claims Administration Costs are Reasonable.

The costs of the Claims Administrator retained by the Parties, estimated at $28,773.49 is being borne by Defendants through the Gross Settlement Amount. The costs of printing and mailing the Notice Materials to Class Members, receiving and processing Opt-Out Statements and objections, providing updates and an affidavit will be part of the QSF. A full description of the services performed by the Claims Administrator can be found in the Settlement Agreement (¶2.4) and the Kulak Declaration (¶ 3(i)-(xxi)). Thus, further weighing in favor of the Court granting final settlement approval.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant the instant motion and (1) confirm as final its provisional certification under Fed. R. Civ. P. 23 (a) and (b)(3); (2) grant final approval to the Parties' settlement; (3) approve as fair the releases of claims set forth in the Agreement

(Agreement at ¶4); (4) confirm as final the appointment of Plaintiff Marisol Medina as class representative; (5) confirm as final the appointment of Bouklas Gaylord LLP as Class Counsel; and (6) grant final approval to the form and manner of notice issued to Class Members. In addition, because the settlement has resolved all claims in this matter, the Court should enter judgment and dismiss this matter with prejudice by entering the proposed final approval order and judgment submitted concurrently herewith.

Dated: September 20, 2024
      Commack, New York

Mark Gaylord, Esq.
*Attorneys for Plaintiff*
357 Veterans Memorial Highway
Commack, New York 11725
Phone: (516) 742-4949
mark@bglawny.com